FILED

2010 Sep-17  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL V. STEPHENSON AND** | ) | |
| **JAN STEPHENSON,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **vs** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **THE BANK OF NEW YORK AS** | ) | _____ |
| **TRUSTEE for Certificate Holders** | ) | |
| **CWABS, INC. Asset-Backed Certificates** | ) | |
| **Series 2007-5ES, Series 2007-5;** | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.** | ) | |
| **AS NOMINEE FOR FOUNDATION** | ) | |
| **FINANCIAL GROUP; COUNTRYWIDE** | ) | |
| **HOME LOANS, INC.,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the Defendants, Countrywide Home Loans, Inc., ("Countrywide"), The Bank of New York, as Trustee for Certificate Holders CWABS, Inc. Asset-Backed Certificate Series 2007-5ES, Series 2007-5 ("BONY"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), hereby remove this action from the Circuit Court of Calhoun County, Alabama, to the United States District Court for the Northern District of Alabama, Eastern Division. In support of this notice, Defendants state as follows:

**A.     THIS NOTICE OF REMOVAL IS TIMELY AND PROPERLY FILED**

1.     This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of causes.

2.      Plaintiffs Michael V. Stephenson and Jan Stephenson ("Plaintiffs") filed this civil action in the Circuit Court of Calhoun County, Alabama on August 7, 2010.  The suit relates to a mortgage loan on which Countrywide was the servicer.

3.      The summons and complaint were served upon all Defendants on August 17, 2010.  True and correct copies of all process, pleadings, and orders served on Defendants are attached hereto as Exhibit 1.

4.      Because this Notice of Removal is filed within thirty (30) days of receipt by Defendants of the summons and complaint in this action, by service or otherwise, it is timely under 28 U.S.C. § 1446(b).

5.      This Court has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between all properly joined parties of interest. Second, the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.  Removal of this action is therefore proper pursuant to 28 U.S.C. §§ 1332 and 1441.

**B.      COMPLETE DIVERSITY OF CITIZENSHIP EXISTS.**

6.      Plaintiffs are, and both were, at the institution of this civil action, citizens and residents of the State of Alabama. See Complaint, p. 5, ¶4. (Plaintiffs reside in Talladega County Alabama).   The real property which is subject of this action is located in Calhoun County, Alabama).  (See Exhibit 2(a), Mortgage)  A party's place of residence is prima facie evidence of his or her domicile. See Katz v. J.C. Penney Corp., 2009 WL 1531219 at *3 (S.D. Fla. June 1, 2009) (citing Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954); Chaara v. Intel Corp., 410 F. Supp. 2d 1080, 1091 (D. N.M. 2005) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile.") (citations omitted); Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (recognizing presumption that state of residence equates to domicile).

7.       Countrywide Home Loans, Inc. is, and was at the time of the institution of this civil action, a New York Corporation with its principal place of business in California.  BONY is, and was at the time of the institution of this civil action, a New York State chartered bank organized with its principal place of business in the State of New York.  MERS is, and was at the time of the institution of this action, a Delaware corporation organized under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of Virginia.   None of the Defendants  are, or were at the time of the filing of the Complaint, citizens or residents of the State of Alabama within the meaning of the Acts of Congress relating to the removal of causes.  Plaintiffs correctly allege in the Complaint that all of the Defendants are foreign entities.  (Complaint, p. 5, ¶¶1-3).  Thus, all properly named parties are of diverse citizenship.

## C.       THE AMOUNT IN CONTROVERSY REQUIREMENT HAS BEEN MET.

8.       Plaintiffs' Complaint does not specify specific damages that they seek to recover in this lawsuit, but in their Complaint they allege "great mental anguish" (¶ 39), and demand judgment for both compensatory and *punitive* damages.  See Complaint, ¶¶ 80, 86.  Plaintiffs assert claims for various types of relief, including damages for Negligent or Wanton Hiring/Supervision (Count Two); Joint Venture Liability (Count Three); Unjust Enrichment (Count Four); Conspiracy (Count Five), Wantonness (Count Seven), and Wrongful Foreclosure (Count Eight).  Plaintiffs' claims are not limited to the amount of the property or the loan at issue, however, as they also seek unspecified and unquantified punitive damages.

9.       The Complaint alleges that a foreclosure sale which took place in August of 2008 was improper in numerous respects, and that BONY, the purchaser, does not have legitimate title to the property, and lacked standing or authority to purchase the "mortgage debt." (Complaint, ¶¶ 7-15).  Plaintiffs further allege that Countrywide serviced the loan in a "negligent or wanton manner" by misapplying payments and/or making unauthorized or improper charges to the

account, and misleading Plaintiffs about possible modification of the loan.  (Complaint, ¶¶ 16-17).  Plaintiffs further allege that MERS made an "illegal" assignment of the Mortgage to BONY and lacked standing or authority to do so.  (Complaint, ¶¶ 18-27).  Plaintiffs allege that the Defendants, in combination, engaged in conduct which constituted a wrongful and wanton foreclosure of the property at issue, and that the foreclosure is due to be set aside and the property returned to them.

10.    The original amount of the loan referenced in the Complaint, according to the Mortgage and Note, was $87,600.  (Exhibit 2 Mortgage, Exhibit 3, Note).  The purchase price at the foreclosure sale was $89,250.  (Exhibit 4, Foreclosure Deed).  This is the value of the property, and the amount or value which would be recovered by Plaintiffs if they were to prevail, and thus it represents the minimum measure of damages, and the amount in controversy.   In their *ad damnum* clause, the Plaintiffs seek unspecified actual damages, punitive damages, as well as an order voiding the foreclosure. Thus, regardless of the ultimate outcome on the merits, the amount in controversy, at this juncture, is the value of the property($89,250), well in excess of the $75,000 threshold, plus any claims for damages related to mental solicitude or punitive damages.

11.    Where a Complaint does not state a demand for a specific amount of damages, a removing defendant must establish the jurisdictional amount by only a preponderance of the evidence.  *See* Lowery v. Alabama Power Company, 483 F.3d 1184, 1211 (11th Cir. 2007); Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).  Under Lowery, the jurisdictional amount is met, and the Court has jurisdiction, where the jurisdictional threshold amount is either stated on the face of the documents before the Court, or is "readily deducible

from them…" 483 F.3d 1184 at 1211.  Moreover, where the plaintiff seeks declaratory relief and compensatory damages, the claims must be aggregated.  Hardy v. Jim Walter Homes, Inc., 2007 WL 1889896 at *4; Exxon Mobil Corp. v. Allapattah Services, Inc., 546 U.S. 546 (2005).

12.    The Plaintiffs' allegations, taken as a whole, satisfy the amount in controversy requirement, and the requisite amount in controversy is readily deducible from the documents before the Court.  Plaintiffs claim that Defendants improperly foreclosed on and sold the property in issue.  The amount in controversy is therefore established by the *value of the property* made the subject of the suit and/or the amount of the mortgage debt at issue.  Mapp v. Deutsche Bank National Trust Co., 2009 WL 3664118, *3 (M.D. Ala. Oct. 28, 2009) (noting that the value of mortgaged property is more than just the value of the equity in the property because ownership of property is a "bundle of rights" including title to the home and the right to peaceful possession and enjoyment of the property and holding that these objects and rights are "best measured by the value of the home itself").

13.    Because complete diversity exists among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has diversity of citizenship jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**D.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.**

14.    As set forth above, this Notice of Removal is filed within thirty (30) days of the receipt by Defendants of the summons and complaint in this action, whether by service or otherwise, and is therefore timely under 28 U.S.C. §1446(b).

15.    A copy of the Notice of Filing which will be filed with the Circuit Court of Calhoun County as of this date is attached hereto as Exhibit 5.

16.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

17.    All named Defendants in this action join in this Notice of Removal.

18.     If any question arises as to the propriety of the removal of this action, the removing Defendants request the opportunity to present a brief and/or argument in support of their position that this case is removable.

**WHEREFORE**, Defendants, desiring to remove this case to the United States District Court for the Northern District of Alabama, Eastern Division, being the district and division of the court for the county in which the action is pending, pray that the filing of this Notice of Removal in this Court and with the Clerk of the Circuit Court of the Calhoun County, Alabama, shall effect the removal of this suit to this Court.

Barry A. Brock
An Attorney for Defendants

OF COUNSEL:
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP
1819 5th Avenue North
P. O. Box 830642
Birmingham, Alabama 35203/35283-0642
Telephone:  (205) 244-5281
Facsimile:  (205) 244-5481
bbrock@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Removal has been served upon counsel of record on this _16th_ day of September, 2010, by placing in the United States mail, properly addressed and postage prepaid, as follows:

James L. Stirling, Jr., Esq.           Nick Wooten, Esq.
Rhonda Steadman Hood, Esq.             Wooten Law Firm, PC
Stirling & Hood, LLC                   PO Box 3389
1117 22nd Street South, Suite 101      Auburn, AL 36862
Birmingham, AL 35205

OF COUNSEL

# EXHIBIT 1

Aug 18 2010 8:30AM    HP LASERJET FA            334-649-4100            page 1

 **CT Corporation**

**Service of Process Transmittal**
08/17/2010
CT Log Number 517127570

TO:     Anthony Mancuso, V.P.
        The Bank of New York Mellon Corporation
        One Wall Street, Legal Department - 11th Floor
        New York, NY 10286

RE:     **Process Served in Alabama**

FOR:    The Bank of New York (Former Name) (Domestic State: NY)
        The Bank of New York Mellon (True Name)

RECEIVED
AUG 18 2010
THE BANK OF N.Y. MELLON
LEGAL DEPT.

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**          Michael V. Stephenson and Jan Stephenson, Pltfs. vs. The Bank of New York as
                             Trustee, etc., et al., Dfts.

**DOCUMENT(S) SERVED:**       Notice, Summons, complaint, First Discovery Request

**COURT/AGENCY:**             Calhoun County Circuit Court, AL
                             Case # CV-2010-900364.00

**NATURE OF ACTION:**         Answer and affirmation defense to the foreclosure

**ON WHOM PROCESS WAS SERVED:** C T Corporation System, Montgomery, AL

**DATE AND HOUR OF SERVICE:**   By Certified Mail on 08/17/2010 postmarked on 08/16/2010

**APPEARANCE OR ANSWER DUE:**   Within 30 days

**ATTORNEY(S) / SENDER(S):**    James L. Stirling, Jr.
                             Stirling & Hood, L.L.C.
                             1117 2nd Street South
                             Suite 101
                             Birmingham, AL 35205
                             205-233-4123

**ACTION ITEMS:**             Telephone, Anthony Mancuso , 212-635-1134
                             *Left VM for Mr. Mancuso*
                             Telephone, Robert Bailey , 212-635-1079
                             *Left voice mail for Mr. Bailey*
                             SOP Papers with Transmittal, via  Fed Ex Standard Overnight , 790354925346
                             SOP Papers with Transmittal, via Fax, Anthony Mancuso 212-635-6591
                             Email Notification, Anthony Mancuso Anthony.mancuso@bnymellon.com
                             Email Notification, Robert Bailey Robert.bailey@bnymellon.com
                             Fax Transmittal, Robert Bailey 212-635-6590

**SIGNED:**                   C T Corporation System
**PER:**                      Amy McLaren
**ADDRESS:**                  2 North Jackson Street
                             Suite 605
                             Montgomery, AL 36104
**TELEPHONE:**                800-592-9023

Page 1 of  1 / TK

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal
opinion as to the nature of action, the amount of damages, the
answer date, or any information contained in the documents
themselves. Recipient is responsible for interpreting said
documents and for taking appropriate action. Signatures on
certified mail receipts confirm receipt of package only, not
contents.



**AlaFile E-Notice**

11-CV-2010-900364.00

To: THE BANK OF NEW YORK AS TRUSTEE
CT CORPORATION SYSTEM
2 N. JACKSON ST SUITE 605
MONTGOMERY, AL 36104

---

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

**MICHAEL V STEPHENSON ET AL v. THE BANK OF NEW YORK AS TRUSTEE ET AL**
**11-CV-2010-900364.00**

The following complaint was FILED on 8/7/2010 8:10:17 AM

Notice Date:     8/7/2010 8:10:17 AM

**TED HOOKS**
**CIRCUIT COURT CLERK**
**CALHOUN COUNTY, ALABAMA**
**25 WEST 11TH STREEt**
**ANNISTON, AL 36201**

**256-231-1750**
**ted.hooks@alacourt.gov**

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev 6/88 | **SUMMONS**<br>- CIVIL - | **Case Number:**<br>11-CV-2010-900364.00 |
| --- | --- | --- |

IN THE CIVIL COURT OF CALHOUN, ALABAMA

**MICHAEL V STEPHENSON ET AL v. THE BANK OF NEW YORK AS TRUSTEE ET AL**

THE BANK OF NEW YORK AS TRUSTEE, CT CORPORATION SYSTEM 2 N. JACKSON ST SUITE 605, MONTGOMERY, AL 36104

**NOTICE TO**

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES L. STIRLING

WHOSE ADDRESS IS 1117 22nd Street South, Ste. 101, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   MICHAEL V STEPHENSON

pursuant to the Alabama Rules of the Civil Procedure

| AUG 16 2010 | /s TED HOOKS | |
| --- | --- | --- |
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JAMES L. STIRLING | **TED HOOKS** |
| --- | --- | --- |
| | Plaintiff's/Attorney's Signature | **CIRCUIT CLERK OF CALHOUN COUNTY**<br>300 CALHOUN COUNTY COURTHOUSE |

RETURN ON SERVICE:                                    25 WEST 11th STREET
                                                       ANNISTON, ALABAMA 36201

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____        _____

Date.                          Server's Signature

CASE ASSIGNED: JUDGE _David_



## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

MICHAEL V. STEPHENSON AND )
JAN STEPHENSON, )
)
    PLAINTIFFS. )
)
VS. )
)
THE BANK OF NEW YORK )
AS TRUSTEE for Certificate Holders )
CWABS, INC. Asset-Backed Certificates )
Series 2007-5ES, Series 2007-5; MORTGAGE )
ELECTRONIC REGISTRATION )
SYSTEMS, INC. AS NOMINEE )
FOR FOUNDATION FINANCIAL GROUP; )
COUNTRYWIDE HOME LOANS, INC. )
and the fictitious defendants who are )
identified as No. 1, whether singular or plural, )
that entity who or which sold the specific )
mortgage product to the Plaintiff which is )
made the basis of this lawsuit;  No. 2, )
whether singular or plural, that entity who or )
which, as an agent, servant or employee )
provided funding for the mortgage product )
sold to the Plaintiff made the basis of this )
lawsuit;  No. 3, whether singular or plural, )
Plaintiff hereby intending to designate that )
entity or individual or those entities or )
individuals who provided funding for the loan )
which is made the basis of this suit at each )
step of the securitization process;  No. 4, )
whether singular or plural, that entity or )
individual who or which, through agents or )
otherwise, marketed to Plaintiff the )
particular mortgage product made the basis )
of this lawsuit; No. 5, whether singular or )
plural, Plaintiff hereby intending to )
designate those persons or entities who )
control, manage or facilitate the mortgage )
foreclosure process for this loan and who )
determines, directs and controls the manner )
in which the foreclosure process is undertaken )



RECEIVED
AUG 18 2010
THE BANK OF N.Y. MELLON
LEGAL DEPT.

CIVIL ACTION NO.: CV 2010-

**CV 2010 90-0364**

No. 6, whether singular or plural, that entity                    )
or individual who or which authorized and                         )
ratified the actions of the persons or entities                   )
responsible for the manner in which the                           )
foreclosure process is undertaken by various                      )
defendants to this action including the                           )
fictitious defendant No. 5; No. 7 are those                       )
entities or individuals who are responsible                       )
for producing and providing documents                            )
used in the foreclosure process to foreclose                      )
upon the Plaintiff and who in fact provide                        )
the documents without regard to whether or                        )
not they are authentic, complete or authorized                    )
by the entity they purport to be prepared by;                     )
No. 8, whether singular or plural, that entity                    )
who or which, as described above, is the                          )
predecessor corporation of any of the                             )
entities described above or in the body of                        )
the complaint; and No. 9, whether singular or                     )
plural, that entity who or which, as described                    )
above, is the successor corporation of any                        )
of the entities described herein; and No. 10                      )
whether singular or plural, that entity who or                    )
which had any involvement with the                                )
origination, servicing, or foreclosure upon                       )
said mortgage loan of the Plaintiff;                              )
No. 11 whether singular or plural are those                       )
persons or entities who are subsidiaries or                       )
affiliates or joint venturers of the Fictitious                   )
Party Defendants herein who are otherwise                         )
unknown at this time or, if their names are                       )
known at this time, their identities as proper                    )
party defendants are not known to the                             )
plaintiff or Plaintiff at this time, and their                    )
their true names will be substituted by                           )
amendment when ascertained.                                       )
                                                                  )
              **DEFENDANTS.**                                     )


                          **COMPLAINT**

## ANSWER AND AFFIRMATIVE DEFENSES TO THE FORECLOSURE

1. The Defendants received no title to the defendants' property because the foreclosure was void.

2. The title taken to the property by the Defendants is of no effect and void because the underlying foreclosure was commenced in violation of law on one or more of the following grounds:

   a) The foreclosing entity lacked standing to foreclose; that is, it did not own the note and mortgage at the time that it instituted the foreclosure action.

   b) The foreclosure was taken in violation of law in that the foreclosing entity did not own the property upon which it foreclosed and therefore could not pass legal title to the lands it claimed to foreclose upon, nor could it acquire legal title to the lands that it foreclose upon.

   c) The foreclosure was taken in violation of law in that the default was exaggerated, inflated and based upon improper and illegal mortgage servicing practices on the part of the foreclosing entity and its agents or employees.

   d) The foreclosure is voidable in that the foreclosure sale was completed by fraud, deceit or trickery on the part of the foreclosing entity and its agents, employees or servants in that the foreclosing parties represented that they would delay the foreclosure but then failed to do so.

   e) The foreclosing entity failed to strictly comply with the requirements set out in Alabama law, and the contract between the parties, with respect to notice, time and place and other legal provisions thereby rendering the foreclosure void.

f) The foreclosing entity failed to engage in loss mitigation required by its agreements and federal servicing guidelines, which the entity is subject to, and because of the failure of the condition precedent to foreclosure, the acceleration and default were invalid and illegal and renders the foreclosure void.

3. There is no default.

4. Acceleration was improper and in violation of the parties' contract.

5. The parties entered into a forebearance or modification agreement which cured any alleged default, and is an absolute defense to foreclosure.

6. The Defendants failed to offer a modification agreement which would have cured any alleged default and would have been an absolute defense to foreclosure as required by their acceptance of federal bailout funds pursuant to HAMP, TARP and guidance from the Treasury Department.

7. The Defendants failed to comply with applicable mortgage servicing regulations, guidelines and agreements and as such a condition precedent to acceleration and foreclosure has been violated requiring the setting aside of the underlying foreclosure action to the extent that the foreclosure sale is not void.

8. The servicer of the loan failed to offer pre-foreclosure loss mitigation as required by the agreements between the trustee and the servicer. This document is called a Pooling and Servicing Agreement or a PSA, in industry parlance, which requires that the servicer take certain action to prevent foreclosure before acceleration of the loan and foreclosure. This failure requires that the underlying action seeking foreclosure

be dismissed or abated until such time as the servicer complies with these requirements.

9. Any mortgage assignment filed in an attempt to transfer the mortgage is void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable as a matter of law.

10. The foreclosing entity lacked standing to initiate a foreclosure; therefore, the foreclosure is void, or at least voidable, and no title has passed to it as there was no legal title to pass to it from the foreclosing entity.

## PROCEDURAL MATTERS

The Stephenson's adopt and reallege all prior paragraphs of any prior responsive pleadings as if set out here in full

## STATEMENT OF THE PARTIES

1. The Defendant THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 in this action is a foreign corporation doing business in Calhoun County, Alabama.

2. The Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FOUNDATION FINANCIAL GROUP in this action is a foreign corporation doing business in Calhoun County, Alabama.

3. The Defendant COUNTRYWIDE HOME LOANS, INC. in this action is a foreign corporation doing business in Calhoun County, Alabama.

4. The Plaintiffs/Stephensons in this action are adult residents of Talladega County, Alabama.

5. The Fictitious Defendants are identified as No. 1, whether singular or

plural, that entity who or which sold the specific mortgage product to the Plaintiffs which is made the basis of this lawsuit; No. 2, whether singular or plural, that entity who or which, as an agent, servant or employee provided funding for the mortgage product sold to the Plaintiffs made the basis of this lawsuit; No. 3, whether singular or plural, counter-plaintiff hereby intending to designate that entity or individual or those entities or individuals who provided funding for the loan made the basis of this suit at each step of the securitization process; No. 4, whether singular or plural, that entity who individual who or which, through agents or otherwise, marketed to Plaintiffs the particular mortgage product made the basis of this lawsuit; No. 5, whether singular or plural, Plaintiffs hereby intending to designate those persons or entities who control the mortgage foreclosure process for this loan and who determine, direct and control the manner in which the foreclosure process is undertaken No. 6, whether singular or plural, that entity or individual who or which authorized and ratified the actions of the persons or entities responsible for the manner in which the foreclosure process is undertaken by various Defendants to this action including the fictitious Defendants No. 5; No. 7 are those entities or individuals who are responsible for producing and providing documents used to foreclose upon the Plaintiffs and who in fact provide the documents without regard to their veracity; No. 8, whether singular or plural, that entity who or which, as described above, is the predecessor corporation of any of the entities described above or in the body of the complaint; and No. 9, whether singular or plural, that entity who or which, as described above, is the successor corporation of any of the entities described herein; and No. 10 whether singular or plural, that entity who or which had any involvement with the origination, servicing, or foreclosure upon said mortgage loan of the Plaintiffs; No. 11 are those persons or entities who are subsidiaries or affiliates or joint venturers of the Fictitious

Party Defendants herein who are otherwise unknown at this time or, if their names are known at this time, their identities as proper party Defendants are not known to the Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

## STATEMENT OF THE FACTS

6.    On or about March 10, 2007, the Plaintiffs borrowed money from Foundation Financial Group. The mortgage was recorded with the probate court of Calhoun County, and list Foundation Financial Group as Lender as "Lender" and Mortgage Electronic Registration Systems, Inc. as "mortgagee".

7.    On or about August 13, 2008, the Plaintiffs received a letter stating that their property was foreclosed upon on August 11, 2008 and that THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 purchased it. Prior to receiving the letter, Plaintiffs attempted to enter into a loan modification agreement with Countrywide Home Loans, Inc.  regarding the outstanding mortgage which Defendants claimed the right to foreclose upon.

8.    Subsequent to that time however, Plaintiffs learned that Countrywide Home Loans, Inc. had in fact conducted a mortgage foreclosure sale on Plaintiffs' property despite their disputes with respect to the ability of Countrywide Home Loans, Inc.  to move forward with the foreclosure sale.

9.    THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, represents that they rightfully purchased the property at the foreclosure.

10.    As will be further shown, THE BANK OF NEW YORK AS TRUSTEE for Certificate
       Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 did not
       have the right to eject Plaintiffs from their home.

11.    In the foreclosure deed dated August 11, 2008 and filed with the probate court, Defendant
       THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc.
       Asset-Backed Certificates Series 2007-5ES, Series 2007-5 contends that it foreclosed in
       accordance with Alabama law and their rights under the security agreement.

12.    CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, is believed to be
       an intended New York Corporate Trust organized and existing under the laws of the State
       of New York,  and believed to be a foreign, corporate trust doing business in Calhoun
       County, Alabama. With respect to the mortgage of the Plaintiffs, the trust claims that it is the
       owner of the mortgage by virtue of foreclosure deed,  and that it has legal standing to eject
       the Plaintiffs.  Under New York law, a corporate trust is formed and exists solely upon the
       basis of its formation documents. With respect to the mortgage securitization industry, these
       corporate trusts, specifically referred to as special purpose entities or special purpose vehicles,
       are formed by the execution of a document called a pooling and servicing agreement under
       New York corporate trust law.  This is not to be confused in any manner with common law
       trusts as corporate trusts are completely creatures of statute.  All the rights, powers, duties,
       obligations and acts which a corporate trust may do or be involved in are specifically set forth
       in the pooling and service agreement.  A Corporate trust is limited to the four corners of its
       trust agreement and has only the rights, powers and abilities set forth in that document.

13.    When "CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5" is searched
       on the SEC database known as the EDGAR database which makes public all filings required

by the SEC, a party finds certain legal filings required by the SEC to establish a publicly

traded "special investment vehicle" or SIV in industry parlance, there are no filing for the

entity known as CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5,

However, it is believed that this loan along with many others were sold by Countrywide

Home Loans, Inc., to an entity known as CWMBS Inc Alternative Loan Trust 2007-5ES

trust, (which is found on the SEC database when "2007-5ES is searched) which then grouped

them into a "pool" and issued certificates with varying rates of return, ranked in order of their

payout priority in the event of shortfalls. It is believed that the loans in the pool were

administered by Countrywide Home Loans, Inc.. It is further believed that The Bank of New

York acted as the "Trustee" and the "Custodian" of the trusts' loan documents.

14.    The Plaintiffs allege, believe and assert that CWABS, Inc. Asset-Backed Certificates Series

2007-5ES, Series 2007-5 cannot be  the owner of their mortgage debt or the mortgage lien

at the time of foreclosure.  The Plaintiffs allege and believe that this corporate trust or their

trustee was without authority to make the purchase at foreclosure sale of Plaintiffs' property.

Thus, all actions undertaken by this corporate trust by their trustee to foreclose on their

property was wrongful, illegal, and in violation of the law.

15.    Based upon probate filings, the Plaintiffs' loan changed ownership prior to the foreclosure,

from Mortgage Electronic Registration Systems, Inc. solely a nominee for Foundation

Financial Group, to THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of

CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5. The assignment

is recorded with the probate court Calhoun County, Alabama . The Plaintiffs allege, upon

information and belief, that the assignment between Mortgage Electronic Registration

Systems, Inc. and THE BANK OF NEW YORK AS TRUSTEE is defective, void, or otherwise unenforceable as to the security instrument in question in this case.

16.   Prior to the foreclosure and during the Defendant's Countrywide Home Loans, Inc.'s servicing of the subject loan, they serviced the loan in a negligent or wanton manner, and in violation of the note and mortgage between the parties.  That is to say that the Defendants engaged in some or all of the following practices with respect to the mortgage account:  the Defendants misapplied payments to the account, marked up charges to the account, improperly placed payments in suspense and failed to credit the payments to the account, made illegal, unauthorized or improper charges to the account in violation of law, the security instruments  and /or various regulatory guidelines, paid one charge for a service to the account (for example, attorney's fees, Broker price opinions, property inspection charges, force placed insurance) but charged the account a higher amount than paid for the service in violation of the law, the security instruments and / or various regulatory guidelines, instituted an accounting system in the form of its mortgage servicing software which created artificial, false or bogus defaults on the account for the purpose of imposing fees and charges to the account of the plaintiff and which paid the Defendants fees before applying payments to principal and interest in violation of the mortgage payment covenant as contained in the security instrument.

17.   When the loan progressed to a state of default, the Defendants assured the Plaintiffs that they would engage in loss mitigation and would not foreclose.  Despite these mitigation assurances from that entity Countrywide Home Loans, Inc. and their agents, the Defendants continued with the foreclosure sale against the Plaintiff's property.

18.  The Defendant, Mortgage Electronic Registration Systems, Inc. (hereinafter   MERS)
     identifies itself in its corporate propaganda as an electronic registry which tracks interests in
     mortgages for companies who become members of MERS.  These companies who become
     members of MERS touch the full spectrum of the real estate cycle from origination to
     foreclosure.

19.  Companies who are members of MERS are also involved in the securitization and sale of
     mortgage loans in the secondary mortgage market gain substantial savings in the costs of
     "bundling" loans through the securitization process by the use of the MERS system through
     the elimination of the recording costs of mortgage assignments associated with the changing
     of the ownership interest in the mortgage loan according to MERS.

20.  MERS is a private corporation with no public recording functions who owns no interest in
     any mortgage loan and exists merely as the mortgagee of record in the land records for each
     "MERS as Mortgagee" mortgage loan, which MERS refers to as a "MOM" loan.

21.  While MERS holds itself out as the Mortgagee of record in the mortgage instrument, the
     universally understood definition of a Mortgagee is that of the person who has loaned money
     that is to be secured by real estate and who has the right to a lien on that real estate.

22.  MERS, in their alternative universe, has another completely separate definition of Mortgagee
     which governs its relationships with its members. However, MERS and its members continue
     to use the term "Mortgagee of Record" and argue that MERS as the lien holder has the right
     to foreclose by intentionally concealing the true nature of its agreements with its members and
     using the term Mortgagee to imply to Courts and consumers that MERS has an enforceable
     interest in any mortgage.

23.    MERS does not loan any money, MERS does not own any lien, MERS never experiences a
default, MERS is not entitled to any payment on any mortgage loan and in fact MERS has
testified that if no borrower ever made another payment on any mortgage loan where MERS
was the mortgagee of record that MERS would not lose any money and would not suffer any
default or any adverse impact which would affect its business.

24.    Further, in the seminal case of *Landmark Bank v. Kesler*, the Supreme Court of Kansas
declared that MERS was nothing more than a straw man having no interest in any mortgage
loan. The *Landmark Bank* court in Kansas declared further that MERS lacked any standing
to enforce any mortgage or to foreclose any mortgage.

25.    Further, because of the nature by which MERS and its members structure the loan process
the parties list MERS as mortgagee in their mortgage documents but the rights of MERS in
the lien are completely independent of any obligation on any mortgage promissory note.
Further, MERS has testified in other litigation that they will never experience default on any
mortgage promissory note.

26.    The actual substance of the transaction with MERS as mortgagee clearly demonstrates that
MERS holds or controls the lien while some other entity owns the promissory note and is
entitled to payment thereof.

27.    The Plaintiffs allege that the assignment from MERS to The Bank of New York as Trustee
is unenforceable, illegal, void, a forgery, a perjury, and a slander of the title to the their
property and that the assignment the Defendants relied upon to foreclose is of no effect.

28.   Notwithstanding the fact that none of these Defendants have the right to foreclose, these parties pressed on with their attempts to take the Stephenson's property through the use of a foreclosure sale ,which none of these parties have the right to exercise.

29.   In fact, under controlling Alabama law it is questionable whether any MERS lien is enforceable as to any property in the State of Alabama based on MERS' own testimony with respect to its rights and responsibilities in the MERS as mortgagee setting.

30.   While these Defendants may have wished to make a mortgage loan, it is questionable as to whether or not there is a valid lien on this property.

31.   Further, even if there is not a valid lien, it does not relieve the Stephensons of the obligation under the debt. It merely means that the true owner of the debt, if they have done equity, might be entitled to an equitable mortgage. However, the true owner of the debt would have to step forward and prove entitlement to an equitable mortgage under controlling law.

32.   What is abundantly clear from the facts of this case are that the Defendants sued in this lawsuit took a home when they had no underlying right to be involved in any foreclosure or to attempt to enforce any debt in this case.

33.   The Defendants are engaged in and have engaged in a pattern and practice of falsifying loan transactions and in particular assignments of mortgages for the purpose of enabling its joint venturers and co-conspirators to foreclose on property of unsuspecting or unknowing consumers illegally and without legal standing to foreclose.

34.   The Defendants are engaged in a joint venture as defined by Alabama law and as such are liable jointly and severally for the actions of all members of the joint venture.

35.   The Plaintiffs contend that said sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Plaintiffs and the owners of the Plaintiffs' mortgage.

36.   The Plaintiffs contend that the foreclosing entity lacked standing to initiate a foreclosure, and that the foreclosure is void or at least voidable and that no title has passed to The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 as there was no legal title to pass to it from the foreclosing entity.

37.   The Plaintiffs allege that the actions of Defendants and their agents, employees and servants were wrongful and tortious.

38.   The Plaintiffs allege that the actions of The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 wrongfully foreclosed in violation of law, and that The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 holds no title to their home or property, and that its actions constitute trespass, negligence, wantonness, abuse of process and slander of title.

39.   As a direct result of the acts complained of the Plaintiff have been caused to suffer great mental anguish, economic and emotional damages and claim from the Defendants all damages allowable under the law.

## COUNT ONE

### (Respondeat Superior Liability)

40.   The Plaintiffs reallege all prior paragraphs as if set out here in full.

41.   The Defendants, The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, hired, directed, or controlled the actions of others with regard to the mortgage loan in this case.

42.   The named Defendants and various fictitious party defendants to this action are alleged, upon information and belief, to be engaged in a civil conspiracy to engage in conduct which is unlawful for the purpose of unjustly enriching the members or participants in the joint venture or civil conspiracy.

43.   The Defendants, in both their individual and trustee capacity, are liable in tort for all the wrongful actions of its agents, employees, joint venturers, co-conspirators, or servants, including named other Defendants and the various fictitious defendants who are as yet unnamed.

44.   As a result of the wrongful actions described herein the Plaintiffs have been injured and damaged and claim all damages allowable under law for these actions.

## COUNT TWO

### (Negligent or Wanton Hiring, Supervision, Training or Retention)

45.   The Plaintiffs realleges all prior paragraphs as if set out here in full.

46.   By the acts more specifically described herein, the Defendants negligently or wantonly hired, trained, supervised or retained the other Defendants as well as other various fictitious party defendants described herein.

47.   As a result of this negligence or wantonness depending on evidence adduced, the Plaintiffs were injured and damaged by the actions of the Defendants as set out herein.

inflated, improper, and otherwise imposed in violation of law and the parties' agreement. The application and imposition of these fees and charges directly related to the conduct of these Defendants in wrongfully foreclosing upon the property of the Plaintiffs in this action. Further, the actions of the Defendants in wrongfully foreclosing upon the plaintiffs' property led to the unjust enrichment of these Defendants by virtue of their possession or attempted possession of the property in violation of law to which they had no legal entitlement.

58.    As a result of the Defendants' unjust enrichment, the Plaintiffs have been injured and damaged in that the Plaintiffs have been charged and assessed fees and charges which were improper, illegal, and in violation of the contracts and applicable law regarding the Plaintiffs' mortgage account. Further, the dispossession of the Plaintiffs from their property further unjustly enriched the Defendants in violation of law in that they had no legal or equitable right to possession of the property at the time in which they trespassed upon the Plaintiffs' real property and dispossessed them of their property.

59.    These actions resulted in injury and damage to the Plaintiffs including financial and emotional injuries.

60.    The Plaintiffs claim all damages allowable under law as a result of the Defendants' wrongful conduct and unjust enrichment.

### COUNT FIVE

### (Civil Conspiracy)

61.    Plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

62.   The Defendants engaged in an unlawful combination and conspiracy to service mortgage loans which they treated as either in default or not in default in such a manner as would generate to the Defendants illegal fees and charges.

63.   This practice resulted in improper and undeserved payments for those fees and charges added to the accounts of unsuspecting borrowers including the Plaintiffs and the collection of those sums and distribution of those sums to the members of the conspiracy.

64.   As a result of this civil conspiracy, civil wrongs were committed against the Plaintiffs and other consumers in the form of acts which were negligent, wanton, illegal, fraudulent, unfair and deceptive.  The motivation for the civil conspiracy was the Defendants' greed for the payment of fees, charges, and other forms of payments and monies to which the Defendants were not entitled to by law, equity or any other reason.

65.   Further, the members of this conspiracy are engaged in conduct which leads to foreclosure actions against unsuspecting borrowers, including the Plaintiffs, in violation of law in that the Defendants lack any legal standing or right to foreclose on the Plaintiffs and they either attempt to do so or do so in violation of law.

66.   The purpose of these actions is to generate additional fees and to allow the various members of the conspiracy to receive payment of various forms of insurance, credits and reimbursements which are available to them based upon the various forms of insurance and collateralization including monoline insurance, credit swaps, overcollateralization pools, and other forms and types of insurance and payment guarantees involved in private label securitizations in the secondary mortgage market for which the members of the conspiracy are acting, are parties to and are involved with.

67.   As a result of the civil conspiracy the Plaintiffs were caused to be injured by the acts of the members of the conspiracy which include the wrongful foreclosure on the Plaintiffs' property.

68.   The Plaintiffs were injured and damaged as a result of this conduct and claims all damages allowed by law.

### COUNT SIX

### (Negligence)

69.   The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

70.   Defendants negligently foreclosed on the property and then ejected the Plaintiffs from the home they rightfully own since the foreclosure is void, and/ or participated or assisted in actions to initiate the foreclosure that was wrongfully conducted. The Defendants further owed a duty to the Plaintiffs to properly collect payments, distribute payments, debit the mortgage account and credit the mortgage account in accordance with the mortgage payment covenant contained in the mortgage. Defendants also owed the Plaintiffs a duty not to assess illegal, unauthorized or improper charges and to service the mortgage of the Plaintiffs in a commercially reasonable manner so as to not create a false default or a default not based in fact.

71.   The Defendants breached their duty to the Plaintiffs by ejecting the Plaintiffs from the home they rightfully own since the foreclosure is void; by not properly crediting the account or distributing the payments appropriately and by applying to the account charges which are illegal, unauthorized or improper and servicing the loan in a manner that is commercially

unreasonable and by creating a false default or exacerbating a default for the purposes of unjustly enriching the Defendants.

72. As a proximate result thereof, the Plaintiff's have been injured and damaged in that they have suffered financial hardship, mental anguish and emotional distress, and have been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise incorrect.

73. As a direct result of the Defendants' negligence, the Plaintiffs were injured and damaged as alleged above and have suffered mental anguish, economic injury and all other damages allowed by law.

74. As a result thereof, the Defendants are liable for all natural, proximate and consequential damages to the Plaintiffs due to their negligence.

## COUNT SEVEN

### (Wantonness)

75. The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

76. The Defendants acted with reckless indifference to the consequences, and consciously and intentionally conducted a wrongful foreclosure sale on Plaintiffs' property and Defendants have acted with reckless indifference to the consequences, and consciously and intentionally foreclosed upon the home Plaintiffs rightfully own since the foreclosure performed is void, and/or participated or assisted in actions to initiate the foreclosure that was wrongfully conducted.

77. These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendants.

78. The Defendants knew that these actions were likely to result in injury to the Plaintiffs including financial and emotional injuries and mental anguish.

79. As a proximate result of the Defendants' wantonness, the Plaintiffs were injured and harmed and suffered financial injury and emotional damage.

80. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their wantonness as well as punitive damages upon a proper evidentiary showing.

## COUNT EIGHT

### (Wrongful Foreclosure)

81. The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

82. Defendants have completed a foreclosure proceeding against the Plaintiffs in violation of law.

83. The initiation of the foreclosure proceeding by Defendants was either negligent or wanton, depending on proof adduced at trial. The foreclosure was wrongful in that at the time of the foreclosure, none of these Defendants had the right to foreclose upon the Plaintiffs because none of these Defendants were the owners of the debt in this case. Therefore, none of these Defendants had the requisite legal standing to assign the mortgage to the foreclosing entity, to the pursue the collection of this debt or foreclosure upon the Plaintiffs' property.

84. As a result thereof, the Plaintiffs were injured and damaged by the Defendants.

85. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

86.    The Plaintiffs claim all damages allowable under the law for these actions

WHEREFORE, the Plaintiffs, having set forth their claims for relief against Defendants, respectfully request of the Court as follows:

A.    That the Plaintiffs have and recover against the Defendants

a sum to be determined by a jury of their peers in the form of actual damages;

B.    That the Plaintiffs have and recover against the Defendants

a sum to be determined by a jury of their peers in the form of punitive damages;

C.    That this Court enter an order voiding the foreclosure action of the Defendants; and

D.    That the Plaintiffs have such other and further relief as the Court may

deem just and proper and equitable given the facts of the case.


_____
Michael V. Stephenson, Plaintiff


_____
Jan Stephenson, Plaintiff


**STATE OF ALABAMA**
**CALHOUN COUNTY**


BEFORE ME, the undersigned, a Notary Public, personally appeared the Petitioners, who being by me first duly sworn, subscribed to the foregoing Petition, and acknowledged before me that being duly informed of the contents of the Petition, they

executed the same voluntarily.

**WITNESS,** my hand and official seal of office, this the ____ day of August 2010.

My commission expires: 5-23-2010

_____
Notary Public

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a trial by struck jury on all claims so triable before the Court.

/s/ James L. Stirling, Jr.

James L. Stirling, Jr. (STI011)

Rhonda Steadman Hood (HOO024)

**STIRLING & HOOD, L.L.C.**

1117 22nd Street South, Ste. 101

Birmingham, AL 35205

(205) 323-4123

(205) 776-2040 fax

jstirling@windstream.net

Nick Wooten, Esq.

**WOOTEN LAW FIRM, PC**

P.O. Box 3389

Auburn, AL 36830

Tel. (334) 246-4409

Please serve the Defendants as follows:

**The Bank of New York**

CT Corporation System

Registered Agent for Service

2 North Jackson Street Suite 605

Montgomery, Alabama 36104

**Mortgage Electronic Registration Systems, Inc.**
CT Corporation System
Registered Agent for Service
2 North Jackson Street Suite 605
Montgomery, Alabama 36104

**Countrywide Home Loans, Inc.**
CT Corporation System
Registered Agent for Service
2 North Jackson Street Suite 605
Montgomery, Alabama 36104

 CT Corporation

**Service of Process Transmittal**
08/17/2010
CT Log Number 517126778

**TO:**   Karina Buitrago CHL ONLY
Bank of America
CA6-915-01-17, 30870 Russell Ranch Road
Westlake Village, CA 91362

**RE:**   **Process Served in Alabama**

**FOR:**   Countrywide Home Loans, Inc. (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Michael V. Stephenson and Jan Stephenson, Pltfs. vs. The Bank of New York, etc., et al. including Countrywide Home Loans, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summons, Complaint, First Discovery Request |
| **COURT/AGENCY:** | Calhoun County Circuit Court, AL<br>Case # CV 2010 900364 |
| **NATURE OF ACTION:** | Foreclosure Litigation - Mortgage - Dft. may claim an interest |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/17/2010 postmarked on 08/16/2010 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | James L. Stirling, Jr.<br>Stirling & Hood, L.L.C.<br>1117 22nd Street South<br>Ste. 101<br>Birmingham, AL 35205<br>205-323-4123 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/17/2010, Expected Purge Date: 08/22/2010<br>Image SOP<br>Email Notification, Valeria Leiva CHL ONLY valeria.leiva@bankofamerica.com<br>Email Notification, Brenda Taormina CHL ONLY brenda.taormina@bankofamerica.com<br>Email Notification, Karina Buitrago CHL ONLY quinnjc100@hotmail.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br><br><br>**TELEPHONE:** | C T Corporation System<br>Amy McLaren<br>2 North Jackson Street<br>Suite 605<br>Montgomery, AL 36104<br>800-592-9023 |

Page 1 of  1 / FP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**AlaFile E-Notice**

11-CV-2010-900364.00

To:  COUNTRYWIDE HOME LOANS, INC.
     CT CORPORATION SYSTEM
     2 N. JACKSON ST SUITE 605
     MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

**IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA**

**MICHAEL V STEPHENSON ET AL v. THE BANK OF NEW YORK AS TRUSTEE ET AL**
**11-CV-2010-900364.00**

The following complaint was FILED on 8/7/2010 8:10:17 AM

Notice Date:     8/7/2010 8:10:17 AM

**TED HOOKS**
**CIRCUIT COURT CLERK**
**CALHOUN COUNTY, ALABAMA**
**25 WEST 11TH STREEt**
**ANNISTON, AL 36201**

256-231-1750
ted.hooks@alacourt.gov

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | **SUMMONS**<br>- CIVIL - | **Case Number:**<br>11-CV-2010-900364.00 |
|---|---|---|

### IN THE CIVIL COURT OF CALHOUN, ALABAMA

**MICHAEL V STEPHENSON ET AL v. THE BANK OF NEW YORK AS TRUSTEE ET AL**

NOTICE TO    COUNTRYWIDE HOME LOANS, INC., CT CORPORATION SYSTEM 2 N. JACKSON ST SUITE 605, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES L. STIRLING

WHOSE ADDRESS IS 1117 22nd Street South, Ste. 101, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    MICHAEL V STEPHENSON
pursuant to the Alabama Rules of the Civil Procedure

| AUG 16 2010 | /s TED HOOKS | |
|---|---|---|
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JAMES L. STIRLING<br>Plaintiff's/Attorney's Signature | **TED HOOKS**<br>CIRCUIT CLERK OF CALHOUN COUNTY<br>300 CALHOUN COUNTY COURTHOUSE,<br>25 WEST 11th STREET<br>ANNISTON, ALABAMA 36201 |
|---|---|---|

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                    _____
Date                    Server's Signature

CASE ASSIGNED: JUDGE *David*



# IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

MICHAEL V. STEPHENSON AND                                )
JAN STEPHENSON,                                           )
                                                          )
      PLAINTIFFS.                                     )
                                                          )
VS.                                                       )
                                                          )
THE BANK OF NEW YORK                                      )
AS TRUSTEE for Certificate Holders                        )
CWABS, INC. Asset-Backed Certificates                     )
Series 2007-5ES, Series 2007-5; MORTGAGE                  )
ELECTRONIC REGISTRATION                                   )
SYSTEMS, INC. AS NOMINEE                                  )    CIVIL ACTION NO.: CV 2010-
FOR FOUNDATION FINANCIAL GROUP;                           )
COUNTRYWIDE HOME LOANS, INC.                              )    CV  2010 9 0 0 3 6 4
and the fictitious defendants who are                     )
identified as No. 1, whether singular or plural,          )
that entity who or which sold the specific                )
mortgage product to the Plaintiff which is                )
made the basis of this lawsuit;  No. 2,                   )
whether singular or plural, that entity who or            )
which, as an agent, servant or employee                   )
provided funding for the mortgage product                 )
sold to the Plaintiff made the basis of this              )
lawsuit;  No. 3, whether singular or plural,              )
Plaintiff hereby intending to designate that              )
entity or individual or those entities or                 )
individuals who provided funding for the loan             )
which is made the basis of this suit at each              )
step of the securitization process;  No. 4,               )
whether singular or plural, that entity or                )
individual who or which, through agents or                )
otherwise, marketed to Plaintiff the                      )
particular mortgage product made the basis                )
of this lawsuit; No. 5, whether singular or               )
plural, Plaintiff hereby intending to                     )
designate those persons or entities who                   )
control, manage or facilitate  the mortgage               )
foreclosure process for this loan and who                 )
determines, directs and controls the manner               )
in which the foreclosure process is undertaken            )

No. 6, whether singular or plural, that entity )
or individual who or which authorized and )
ratified the actions of the persons or entities )
responsible for the manner in which the )
foreclosure process is undertaken by various )
defendants to this action including the )
fictitious defendant No. 5; No. 7 are those )
entities or individuals who are responsible )
for producing and providing documents )
used in the foreclosure process to foreclose )
upon the Plaintiff and who in fact provide )
the documents without regard to whether or )
not they are authentic, complete or authorized )
by the entity they purport to be prepared by; )
No. 8, whether singular or plural, that entity )
who or which, as described above, is the )
predecessor corporation of any of the )
entities described above or in the body of )
the complaint; and No. 9, whether singular or )
plural, that entity who or which, as described )
above, is the successor corporation of any )
of the entities described herein; and No. 10 )
whether singular or plural, that entity who or )
which had any involvement with the )
origination, servicing, or foreclosure upon )
said mortgage loan of the Plaintiff; )
No. 11 whether singular or plural are those )
persons or entities who are subsidiaries or )
affiliates or joint venturers of the Fictitious )
Party Defendants herein who are otherwise )
unknown at this time or, if their names are )
known at this time, their identities as proper )
party defendants are not known to the )
plaintiff or Plaintiff at this time, and their )
their true names will be substituted by )
amendment when ascertained. )
                                                )
              **DEFENDANTS.**                   )
                                                )

**COMPLAINT**

## ANSWER AND AFFIRMATIVE DEFENSES TO THE FORECLOSURE

1.    The Defendants received no title to the defendants' property because the foreclosure was void.

2.    The title taken to the property by the Defendants is of no effect and void because the underlying foreclosure was commenced in violation of law on one or more of the following grounds:

   a)    The foreclosing entity lacked standing to foreclose; that is, it did not own the note and mortgage at the time that it instituted the foreclosure action.

   b)    The foreclosure was taken in violation of law in that the foreclosing entity did not own the property upon which it foreclosed and therefore could not pass legal title to the lands it claimed to foreclose upon, nor could it acquire legal title to the lands that it foreclose upon.

   c)    The foreclosure was taken in violation of law in that the default was exaggerated, inflated and based upon improper and illegal mortgage servicing practices on the part of the foreclosing entity and its agents or employees.

   d)    The foreclosure is voidable in that the foreclosure sale was completed by fraud, deceit or trickery on the part of the foreclosing entity and its agents, employees or servants in that the foreclosing parties represented that they would delay the foreclosure but then failed to do so.

   e)    The foreclosing entity failed to strictly comply with the requirements set out in Alabama law, and the contract between the parties, with respect to notice, time and place and other legal provisions thereby rendering the foreclosure void.

f)       The foreclosing entity failed to engage in loss mitigation required by its agreements and federal servicing guidelines, which the entity is subject to, and because of the failure of the condition precedent to foreclosure, the acceleration and default were invalid and illegal and renders the foreclosure void.

3.     There is no default.

4.     Acceleration was improper and in violation of the parties' contract.

5.     The parties entered into a forebearance or modification agreement which cured any alleged default, and is an absolute defense to foreclosure.

6.     The Defendants failed to offer a modification agreement which would have cured any alleged default and would have been an absolute defense to foreclosure as required by their acceptance of federal bailout funds pursuant to HAMP, TARP and guidance from the Treasury Department.

7.     The Defendants failed to comply with applicable mortgage servicing regulations, guidelines and agreements and as such a condition precedent to acceleration and foreclosure has been violated requiring the setting aside of the underlying foreclosure action to the extent that the foreclosure sale is not void.

8.     The servicer of the loan failed to offer pre-foreclosure loss mitigation as required by the agreements between the trustee and the servicer. This document is called a Pooling and Servicing Agreement or a PSA, in industry parlance, which requires that the servicer take certain action to prevent foreclosure before acceleration of the loan and foreclosure. This failure requires that the underlying action seeking foreclosure

be dismissed or abated until such time as the servicer complies with these requirements.

9.    Any mortgage assignment filed in an attempt to transfer the mortgage is void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable as a matter of law.

10.   The foreclosing entity lacked standing to initiate a foreclosure; therefore, the foreclosure is void, or at least voidable, and no title has passed to it as there was no legal title to pass to it from the foreclosing entity.

## PROCEDURAL MATTERS

The Stephenson's adopt and reallege all prior paragraphs of any prior responsive pleadings as if set out here in full

## STATEMENT OF THE PARTIES

1.    The Defendant THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 in this action is a foreign corporation doing business in Calhoun County, Alabama.

2.    The Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FOUNDATION FINANCIAL GROUP in this action is a foreign corporation doing business in Calhoun County, Alabama.

3.    The Defendant COUNTRYWIDE HOME LOANS, INC.  in this action is a foreign corporation doing business in Calhoun County, Alabama.

4.    The Plaintiffs/Stephensons  in this action are adult residents of Talladega County, Alabama.

5.    The Fictitious Defendants are identified as No. 1, whether singular or

plural, that entity who or which sold the specific mortgage product to the Plaintiffs which is made the basis of this lawsuit; No. 2, whether singular or plural, that entity who or which, as an agent, servant or employee provided funding for the mortgage product sold to the Plaintiffs made the basis of this lawsuit; No. 3, whether singular or plural, counter-plaintiff hereby intending to designate that entity or individual or those entities or individuals who provided funding for the loan made the basis of this suit at each step of the securitization process; No. 4, whether singular or plural, that entity who individual who or which, through agents or otherwise, marketed to Plaintiffs the particular mortgage product made the basis of this lawsuit; No. 5, whether singular or plural, Plaintiffs hereby intending to designate those persons or entities who control the mortgage foreclosure process for this loan and who determine, direct and control the manner in which the foreclosure process is undertaken No. 6, whether singular or plural, that entity or individual who or which authorized and ratified the actions of the persons or entities responsible for the manner in which the foreclosure process is undertaken by various Defendants to this action including the fictitious Defendants No. 5; No. 7 are those entities or individuals who are responsible for producing and providing documents used to foreclose upon the Plaintiffs and who in fact provide the documents without regard to their veracity; No. 8, whether singular or plural, that entity who or which, as described above, is the predecessor corporation of any of the entities described above or in the body of the complaint; and No. 9, whether singular or plural, that entity who or which, as described above, is the successor corporation of any of the entities described herein; and No. 10 whether singular or plural, that entity who or which had any involvement with the origination, servicing, or foreclosure upon said mortgage loan of the Plaintiffs; No. 11 are those persons or entities who are subsidiaries or affiliates or joint venturers of the Fictitious

Party Defendants herein who are otherwise unknown at this time or, if their names are known at this time, their identities as proper party Defendants are not known to the Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

## STATEMENT OF THE FACTS

6.      On or about March 10, 2007, the Plaintiffs borrowed money from Foundation Financial Group. The mortgage was recorded with the probate court of Calhoun County, and list Foundation Financial Group as Lender as "Lender" and Mortgage Electronic Registration Systems, Inc. as "mortgagee".

7.      On or about August 13, 2008, the Plaintiffs received a letter stating that their property was foreclosed upon on August 11, 2008 and that THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 purchased it. Prior to receiving the letter, Plaintiffs attempted to enter into a loan modification agreement with Countrywide Home Loans, Inc. regarding the outstanding mortgage which Defendants claimed the right to foreclose upon.

8.      Subsequent to that time however, Plaintiffs learned that Countrywide Home Loans, Inc. had in fact conducted a mortgage foreclosure sale on Plaintiffs' property despite their disputes with respect to the ability of Countrywide Home Loans, Inc. to move forward with the foreclosure sale.

9.      THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, represents that they rightfully purchased the property at the foreclosure.

10.     As will be further shown, THE BANK OF NEW YORK AS TRUSTEE for Certificate

Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 did not

have the right to eject Plaintiffs from their home.

11.     In the foreclosure deed dated August 11, 2008 and filed with the probate court, Defendant

THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc.

Asset-Backed Certificates Series 2007-5ES, Series 2007-5 contends that it foreclosed in

accordance with Alabama law and their rights under the security agreement.

12.     CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, is believed to be

an intended New York Corporate Trust organized and existing under the laws of the State

of New York, and believed to be a foreign, corporate trust doing business in Calhoun

County, Alabama. With respect to the mortgage of the Plaintiffs, the trust claims that it is the

owner of the mortgage by virtue of foreclosure deed, and that it has legal standing to eject

the Plaintiffs. Under New York law, a corporate trust is formed and exists solely upon the

basis of its formation documents. With respect to the mortgage securitization industry, these

corporate trusts, specifically referred to as special purpose entities or special purpose vehicles,

are formed by the execution of a document called a pooling and servicing agreement under

New York corporate trust law. This is not to be confused in any manner with common law

trusts as corporate trusts are completely creatures of statute. All the rights, powers, duties,

obligations and acts which a corporate trust may do or be involved in are specifically set forth

in the pooling and service agreement. A Corporate trust is limited to the four corners of its

trust agreement and has only the rights, powers and abilities set forth in that document.

13.     When "CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5" is searched

on the SEC database known as the EDGAR database which makes public all filings required

by the SEC, a party finds certain legal filings required by the SEC to establish a publicly traded "special investment vehicle" or SIV in industry parlance, there are no filing for the entity known as CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, However, it is believed that this loan along with many others were sold by Countrywide Home Loans, Inc., to an entity known as CWMBS Inc Alternative Loan Trust 2007-5ES trust, (which is found on the SEC database when "2007-5ES is searched) which then grouped them into a "pool" and issued certificates with varying rates of return, ranked in order of their payout priority in the event of shortfalls. It is believed that the loans in the pool were administered by Countrywide Home Loans, Inc.. It is further believed that The Bank of New York acted as the "Trustee" and the "Custodian" of the trusts' loan documents.

14.    The Plaintiffs allege, believe and assert that CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 cannot be   the owner of their mortgage debt or the mortgage lien at the time of foreclosure.  The Plaintiffs allege and believe that this corporate trust or their trustee was without authority to make the purchase at foreclosure sale of Plaintiffs' property. Thus, all actions undertaken by this corporate trust by their trustee to foreclose on their property was wrongful, illegal, and in violation of the law.

15.    Based upon probate filings, the Plaintiffs' loan changed ownership prior to the foreclosure, from Mortgage Electronic Registration Systems, Inc. solely a nominee for Foundation Financial Group, to THE BANK OF NEW YORK AS TRUSTEE for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5. The assignment is  recorded with the probate court Calhoun County, Alabama . The Plaintiffs allege, upon information and belief, that the assignment between Mortgage Electronic Registration

Systems, Inc. and THE BANK OF NEW YORK AS TRUSTEE is defective, void, or otherwise unenforceable as to the security instrument in question in this case.

16. Prior to the foreclosure and during the Defendant's Countrywide Home Loans, Inc.'s servicing of the subject loan, they serviced the loan in a negligent or wanton manner, and in violation of the note and mortgage between the parties. That is to say that the Defendants engaged in some or all of the following practices with respect to the mortgage account: the Defendants misapplied payments to the account, marked up charges to the account, improperly placed payments in suspense and failed to credit the payments to the account, made illegal, unauthorized or improper charges to the account in violation of law, the security instruments and /or various regulatory guidelines, paid one charge for a service to the account (for example, attorney's fees, Broker price opinions, property inspection charges, force placed insurance) but charged the account a higher amount than paid for the service in violation of the law, the security instruments and / or various regulatory guidelines, instituted an accounting system in the form of its mortgage servicing software which created artificial, false or bogus defaults on the account for the purpose of imposing fees and charges to the account of the plaintiff and which paid the Defendants fees before applying payments to principal and interest in violation of the mortgage payment covenant as contained in the security instrument.

17. When the loan progressed to a state of default, the Defendants assured the Plaintiffs that they would engage in loss mitigation and would not foreclose. Despite these mitigation assurances from that entity Countrywide Home Loans, Inc. and their agents, the Defendants continued with the foreclosure sale against the Plaintiff's property.

18.   The Defendant, Mortgage Electronic Registration Systems, Inc. (hereinafter MERS) identifies itself in its corporate propaganda as an electronic registry which tracks interests in mortgages for companies who become members of MERS.   These companies who become members of MERS touch the full spectrum of the real estate cycle from origination to foreclosure.

19.   Companies who are members of MERS are also involved in the securitization and sale of mortgage loans in the secondary mortgage market gain substantial savings in the costs of "bundling" loans through the securitization process by the use of the MERS system through the elimination of the recording costs of mortgage assignments associated with the changing of the ownership interest in the mortgage loan according to MERS.

20.   MERS is a private corporation with no public recording functions who owns no interest in any mortgage loan and exists merely as the mortgagee of record in the land records for each "MERS as Mortgagee" mortgage loan, which MERS refers to as a "MOM" loan.

21.   While MERS holds itself out as the Mortgagee of record in the mortgage instrument, the universally understood definition of a Mortgagee is that of the person who has loaned money that is to be secured by real estate and who has the right to a lien on that real estate.

22.   MERS, in their alternative universe, has another completely separate definition of Mortgagee which governs its relationships with its members. However, MERS and its members continue to use the term "Mortgagee of Record" and argue that MERS as the lien holder has the right to foreclose by intentionally concealing the true nature of its agreements with its members and using the term Mortgagee to imply to Courts and consumers that MERS has an enforceable interest in any mortgage.

23.   MERS does not loan any money, MERS does not own any lien, MERS never experiences a
      default, MERS is not entitled to any payment on any mortgage loan and in fact MERS has
      testified that if no borrower ever made another payment on any mortgage loan where MERS
      was the mortgagee of record that MERS would not lose any money and would not suffer any
      default or any adverse impact which would affect its business.

24.   Further, in the seminal case of *Landmark Bank v. Kesler*, the Supreme Court of Kansas
      declared that MERS was nothing more than a straw man having no interest in any mortgage
      loan.  The *Landmark Bank* court in Kansas declared further that MERS lacked any standing
      to enforce any mortgage or to foreclose any mortgage.

25.   Further, because of the nature by which MERS and its members structure the loan process
      the parties list MERS as mortgagee in their mortgage documents but the rights of MERS in
      the lien are completely independent of any obligation on any mortgage promissory note.
      Further, MERS has testified in other litigation that they will never experience default on any
      mortgage promissory note.

26.   The actual substance of the transaction with MERS as mortgagee clearly demonstrates that
      MERS holds or controls the lien while some other entity owns the promissory note and is
      entitled to payment thereof.

27.   The Plaintiffs allege that the assignment from MERS to The Bank of New York as Trustee
      is unenforceable, illegal, void, a forgery, a perjury, and a slander of the title to the their
      property and that the assignment the Defendants relied upon  to foreclose is of no effect.

28. Notwithstanding the fact that none of these Defendants have the right to foreclose, these parties pressed on with their attempts to take the Stephenson's property through the use of a foreclosure sale ,which none of these parties have the right to exercise.

29. In fact, under controlling Alabama law it is questionable whether any MERS lien is enforceable as to any property in the State of Alabama based on MERS' own testimony with respect to its rights and responsibilities in the MERS as mortgagee setting.

30. While these Defendants may have wished to make a mortgage loan, it is questionable as to whether or not there is a valid lien on this property.

31. Further, even if there is not a valid lien, it does not relieve the Stephensons of the obligation under the debt. It merely means that the true owner of the debt, if they have done equity, might be entitled to an equitable mortgage. However, the true owner of the debt would have to step forward and prove entitlement to an equitable mortgage under controlling law.

32. What is abundantly clear from the facts of this case are that the Defendants sued in this lawsuit took a home when they had no underlying right to be involved in any foreclosure or to attempt to enforce any debt in this case.

33. The Defendants are engaged in and have engaged in a pattern and practice of falsifying loan transactions and in particular assignments of mortgages for the purpose of enabling its joint venturers and co-conspirators to foreclose on property of unsuspecting or unknowing consumers illegally and without legal standing to foreclose.

34. The Defendants are engaged in a joint venture as defined by Alabama law and as such are liable jointly and severally for the actions of all members of the joint venture.

35.     The Plaintiffs contend that said sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Plaintiffs and the owners of the Plaintiffs' mortgage.

36.     The Plaintiffs contend that the foreclosing entity lacked standing to initiate a foreclosure, and that the foreclosure is void or at least voidable and that no title has passed to The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 as there was no legal title to pass to it from the foreclosing entity.

37.     The Plaintiffs allege that the actions of Defendants and their agents, employees and servants were wrongful and tortious.

38.     The Plaintiffs allege that the actions of The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 wrongfully foreclosed in violation of law, and that The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5 holds no title to their home or property, and that its actions constitute trespass, negligence, wantonness, abuse of process and slander of title.

39.     As a direct result of the acts complained of the Plaintiff have been caused to suffer great mental anguish, economic and emotional damages and claim from the Defendants all damages allowable under the law.

## COUNT ONE

### (Respondeat Superior Liability)

40.     The Plaintiffs reallege all prior paragraphs as if set out here in full.

41.   The Defendants, The New York Bank as Trustee for Certificate Holders of CWABS, Inc. Asset-Backed Certificates Series 2007-5ES, Series 2007-5, hired, directed, or controlled the actions of others with regard to the mortgage loan in this case.

42.   The named Defendants and various fictitious party defendants to this action are alleged, upon information and belief, to be engaged in a civil conspiracy to engage in conduct which is unlawful for the purpose of unjustly enriching the members or participants in the joint venture or civil conspiracy.

43.   The Defendants, in both their individual and trustee capacity, are liable in tort for all the wrongful actions of its agents, employees, joint venturers, co-conspirators, or servants, including named other Defendants and the various fictitious defendants who are as yet unnamed.

44.   As a result of the wrongful actions described herein the Plaintiffs have been injured and damaged and claim all damages allowable under law for these actions.

## COUNT TWO

### (Negligent or Wanton Hiring, Supervision, Training or Retention)

45.   The Plaintiffs reallege all prior paragraphs as if set out here in full.

46.   By the acts more specifically described herein, the Defendants negligently or wantonly hired, trained, supervised or retained the other Defendants as well as other various fictitious party defendants described herein.

47.   As a result of this negligence or wantonness depending on evidence adduced, the Plaintiffs were injured and damaged by the actions of the Defendants as set out herein.

48. As a result, the Defendants are liable for all damages proximately and directly flowing from the actions of its agents, employees, joint venturers or servants.

49. As a result of the harm suffered by the Plaintiffs, the Plaintiffs claim all damages allowed under law.

### COUNT THREE

### (Joint Venture Liability)

50. The Plaintiffs reallege all prior paragraphs as if set out here in full.

51. The Defendants in this action are part of a joint venture as defined by controlling law.

52. As a member of that joint venture, the Defendants are liable to the Plaintiffs for any tortious actions of any member of the joint venture against the Defendants.

53. As a result thereof, the Plaintiffs reallege in its entirety the entire complaint against the Defendants herein.

54. As a result of the actions of the joint venturers, the Plaintiffs have been injured and damaged as heretofore alleged.

55. The Plaintiffs claim all damages as allowed by law for the wrongful acts of the joint venturers against them.

### COUNT FOUR

### (Unjust Enrichment)

56. The Plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

57. The actions of the Defendants with respect to their servicing and foreclosure procedures resulted in the application to the Plaintiff's account charges and fees which were illegal,

inflated, improper, and otherwise imposed in violation of law and the parties' agreement. The application and imposition of these fees and charges directly related to the conduct of these Defendants in wrongfully foreclosing upon the property of the Plaintiffs in this action. Further, the actions of the Defendants in wrongfully foreclosing upon the plaintiffs' property led to the unjust enrichment of these Defendants by virtue of their possession or attempted possession of the property in violation of law to which they had no legal entitlement.

58.     As a result of the Defendants' unjust enrichment, the Plaintiffs have been injured and damaged in that the Plaintiffs have been charged and assessed fees and charges which were improper, illegal, and in violation of the contracts and applicable law regarding the Plaintiffs' mortgage account. Further, the dispossession of the Plaintiffs from their property further unjustly enriched the Defendants in violation of law in that they had no legal or equitable right to possession of the property at the time in which they trespassed upon the Plaintiffs' real property and dispossessed them of their property.

59.     These actions resulted in injury and damage to the Plaintiffs including financial and emotional injuries.

60.     The Plaintiffs claim all damages allowable under law as a result of the Defendants' wrongful conduct and unjust enrichment.

## COUNT FIVE

### (Civil Conspiracy)

61.     Plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

62. The Defendants engaged in an unlawful combination and conspiracy to service mortgage loans which they treated as either in default or not in default in such a manner as would generate to the Defendants illegal fees and charges.

63. This practice resulted in improper and undeserved payments for those fees and charges added to the accounts of unsuspecting borrowers including the Plaintiffs and the collection of those sums and distribution of those sums to the members of the conspiracy.

64. As a result of this civil conspiracy, civil wrongs were committed against the Plaintiffs and other consumers in the form of acts which were negligent, wanton, illegal, fraudulent, unfair and deceptive. The motivation for the civil conspiracy was the Defendants' greed for the payment of fees, charges, and other forms of payments and monies to which the Defendants were not entitled to by law, equity or any other reason.

65. Further, the members of this conspiracy are engaged in conduct which leads to foreclosure actions against unsuspecting borrowers, including the Plaintiffs, in violation of law in that the Defendants lack any legal standing or right to foreclose on the Plaintiffs and they either attempt to do so or do so in violation of law.

66. The purpose of these actions is to generate additional fees and to allow the various members of the conspiracy to receive payment of various forms of insurance, credits and reimbursements which are available to them based upon the various forms of insurance and collateralization including monoline insurance, credit swaps, overcollateralization pools, and other forms and types of insurance and payment guarantees involved in private label securitizations in the secondary mortgage market for which the members of the conspiracy are acting, are parties to and are involved with.

67. As a result of the civil conspiracy the Plaintiffs were caused to be injured by the acts of the members of the conspiracy which include the wrongful foreclosure on the Plaintiffs' property.

68. The Plaintiffs were injured and damaged as a result of this conduct and claims all damages allowed by law.

## COUNT SIX

### (Negligence)

69. The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

70. Defendants negligently foreclosed on the property and then ejected the Plaintiffs from the home they rightfully own since the foreclosure is void, and/ or participated or assisted in actions to initiate the foreclosure that was wrongfully conducted. The Defendants further owed a duty to the Plaintiffs to properly collect payments, distribute payments, debit the mortgage account and credit the mortgage account in accordance with the mortgage payment covenant contained in the mortgage. Defendants also owed the Plaintiffs a duty not to assess illegal, unauthorized or improper charges and to service the mortgage of the Plaintiffs in a commercially reasonable manner so as to not create a false default or a default not based in fact.

71. The Defendants breached their duty to the Plaintiffs by ejecting the Plaintiffs from the home they rightfully own since the foreclosure is void; by not properly crediting the account or distributing the payments appropriately and by applying to the account charges which are illegal, unauthorized or improper and servicing the loan in a manner that is commercially

unreasonable and by creating a false default or exacerbating a default for the purposes of unjustly enriching the Defendants.

72.   As a proximate result thereof, the Plaintiffs have been injured and damaged in that they have suffered financial hardship, mental anguish and emotional distress, and have been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise incorrect.

73.   As a direct result of the Defendants' negligence, the Plaintiffs were injured and damaged as alleged above and have suffered mental anguish, economic injury and all other damages allowed by law.

74.   As a result thereof, the Defendants are liable for all natural, proximate and consequential damages to the Plaintiffs due to their negligence.

## COUNT SEVEN

### (Wantonness)

75.   The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

76.   The Defendants acted with reckless indifference to the consequences, and consciously and intentionally conducted a wrongful foreclosure sale on Plaintiffs' property and Defendants have acted with reckless indifference to the consequences, and consciously and intentionally foreclosed upon the home Plaintiffs rightfully own since the foreclosure performed is void, and/or participated or assisted in actions to initiate the foreclosure that was wrongfully conducted..

77.   These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendants.

78. The Defendants knew that these actions were likely to result in injury to the Plaintiffs including financial and emotional injuries and mental anguish.

79. As a proximate result of the Defendants' wantonness, the Plaintiffs were injured and harmed and suffered financial injury and emotional damage.

80. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their wantonness as well as punitive damages upon a proper evidentiary showing.

## COUNT EIGHT

### (Wrongful Foreclosure )

81. The Plaintiffs reallege all prior paragraphs of the pleading as if set out here in full.

82. Defendants have completed a foreclosure proceeding against the Plaintiffs in violation of law.

83. The initiation of the foreclosure proceeding by Defendants was either negligent or wanton, depending on proof adduced at trial. The foreclosure was wrongful in that at the time of the foreclosure, none of these Defendants had the right to foreclose upon the Plaintiffs because none of these Defendants were the owners of the debt in this case. Therefore, none of these Defendants had the requisite legal standing to assign the mortgage to the foreclosing entity, to the pursue the collection of this debt or foreclosure upon the Plaintiffs' property.

84. As a result thereof, the Plaintiffs were injured and damaged by the Defendants.

85. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

86.    The Plaintiffs claim all damages allowable under the law for these actions

WHEREFORE, the Plaintiffs, having set forth their claims for relief against Defendants, respectfully request of the Court as follows:

A.    That the Plaintiffs have and recover against the Defendants

a sum to be determined by a jury of their peers in the form of actual damages;

B.    That the Plaintiffs have and recover against the Defendants

a sum to be determined by a jury of their peers in the form of punitive damages;

C.    That this Court enter an order voiding the foreclosure action of the Defendants; and

D.    That the Plaintiffs have such other and further relief as the Court may

deem just and proper and equitable given the facts of the case.

Michael V. Stephenson, Plaintiff

Jan Stephenson, Plaintiff

**STATE OF ALABAMA**
**CALHOUN COUNTY**

**BEFORE ME**, the undersigned, a Notary Public, personally appeared the Petitioners, who being by me first duly sworn, subscribed to the foregoing Petition, and acknowledged before me that being duly informed of the contents of the Petition, they

executed the same voluntarily.

**WITNESS,** my hand and official seal of office, this the ———6th——— day of August 2010.

My commission expires:   5-23-2010

_____
Notary Public

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a trial by struck jury on all claims so triable before the Court.

/s/ James L. Stirling, Jr.

James L. Stirling, Jr. (STI011)

Rhonda Steadman Hood (HOO024)

**STIRLING & HOOD, L.L.C.**

1117 22nd Street South, Ste. 101

Birmingham, AL 35205

(205) 323-4123

(205) 776-2040 fax

jstiriing@windstream.net

Nick Wooten, Esq.

**WOOTEN LAW FIRM, PC**

P.O. Box 3389

Auburn, AL  36830

Tel. (334) 246-4409

Please serve the Defendants as follows:

**The Bank of New York**

CT Corporation System

Registered Agent for Service

2 North Jackson Street Suite 605

Montgomery, Alabama 36104

**Mortgage Electronic Registration Systems, Inc.**
CT Corporation System
Registered Agent for Service
2 North Jackson Street Suite 605
Montgomery, Alabama 36104

**Countrywide Home Loans, Inc.**
CT Corporation System
Registered Agent for Service
2 North Jackson Street Suite 605
Montgomery, Alabama 36104

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number:**<br>11-CV-2010-900364.00 |
|---|---|---|

## IN THE CIVIL COURT OF CALHOUN, ALABAMA
### MICHAEL V STEPHENSON ET AL v. THE BANK OF NEW YORK AS TRUSTEE ET AL

**NOTICE TO**  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CT CORPORATION SYSTEM 2 N. JACKSON ST SUITE 605, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES L. STIRLING

WHOSE ADDRESS IS 1117 22nd Street South,  Ste. 101, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    MICHAEL V STEPHENSON
   pursuant to the Alabama Rules of the Civil Procedure

| 8/7/2010 8:10:17 AM | /s TED HOOKS | |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested    /s JAMES L. STIRLING

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____    _____

Date    Server's Signature

AVSO702

**ALABAMA JUDICIAL DATA CENTER**
**CALHOUN    COUNTY**
**SERVICE NOTICE**

CV 2010 900364.00
R. JOEL LAIRD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IN THE CIRCUIT  COURT OF  CALHOUN      COUNTY

MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL      D002

STIRLING JAMES LARRY JR                CASE NUMBER: CV 2010 900364 00
1117 22ND ST S STE 101                 PARTY NUMBER:C001

BIRMINGHAM  AL   35205

YOUR ATTORNEY CODE IS STI011

THE SUMMONS AND COMPLAINT             WAS SERVED ON MORTGAGE ELECTRONIC RE
ON 08/17/2010 BY: CERTIFIED MAIL.

DATE:09/01/2010   CLERK:TED HOOKS
300 CALHOUN CO COURTHOUSE
ANNISTON   AL   36201
(256)231-1750

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OPERATOR: KRD
PREPARED: 09/01/2010

---



SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mortgage Electronic Registration
Systems, Inc.
c/o CT Corporation System
Suite 605
2 N. Jackson St.
Montgomery, AL 36104

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X Laura B           ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )  C. Date of Delivery
Laura B                8/17/10

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7009 0960 0001 0834 9417

PS Form 3811, February 2004     Domestic Return Receipt CV2010-900364     102595-02-M-1540

AVSO702                     ALABAMA JUDICIAL DATA CENTER
                                  CALHOUN      COUNTY
                                 SERVICE NOTICE
                                                        CV 2010 900364.00
                                          R. JOEL LAIRD
--------------------------------------------------------------------------

                IN THE CIRCUIT  COURT OF  CALHOUN       COUNTY

MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL      D002


     HOOD RHONDA STEADMAN              CASE NUMBER: CV 2010 900364 00
     1117 22ND ST S STE 101           PARTY NUMBER:C001
     BIRMINGHAM AL   35205

     YOUR ATTORNEY CODE IS HOO024

THE SUMMONS AND COMPLAINT            WAS SERVED ON MORTGAGE ELECTRONIC RE
ON 08/17/2010 BY: CERTIFIED MAIL.




                     DATE:09/01/2010   CLERK:TED HOOKS
                                       300 CALHOUN CO COURTHOUSE
                                       ANNISTON  AL   36201
                                       (256)231-1750
--------------------------------------------------------------------------
OPERATOR: KRD
PREPARED: 09/01/2010

AVSO702
ALABAMA JUDICIAL DATA CENTER
CALHOUN      COUNTY
SERVICE NOTICE
CV 2010 900364.00
R. JOEL LAIRD

IN THE CIRCUIT COURT OF CALHOUN      COUNTY

MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL      D003

STIRLING JAMES LARRY JR
1117 22ND ST S STE 101
BIRMINGHAM AL  35205

CASE NUMBER: CV 2010 900364 00
PARTY NUMBER:C001

YOUR ATTORNEY CODE IS STI011

THE SUMMONS AND COMPLAINT
ON 08/17/2010 BY: CERTIFIED MAIL.

WAS SERVED ON COUNTRYWIDE HOME LOANS

DATE:09/01/2010  CLERK:TED HOOKS
300 CALHOUN CO COURTHOUSE
ANNISTON  AL  36201
(256)231-1750

OPERATOR: KRD
PREPARED: 09/01/2010

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Countrywide Home Loans, Inc.
c/o CT Corporation System
Suite 605
2 N. Jackson St.
Montgomery, AL 36104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                8/17/10

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☑ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7009 0960 0001 0834 9431

PS Form 3811, February 2004   Domestic Return Receipt  CV 2010-900364   102595-02-M-1540

```
AVSO702              ALABAMA JUDICIAL DATA CENTER
                          CALHOUN      COUNTY
                          SERVICE NOTICE
                                        CV 2010 900364.00
                                     R. JOEL LAIRD
     ---------------------------------------------------------------
              IN THE CIRCUIT  COURT OF  CALHOUN      COUNTY

     MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL     D003


         HOOD RHONDA STEADMAN            CASE NUMBER: CV 2010 900364 00
         1117 22ND ST S STE 101          PARTY NUMBER:C001
         BIRMINGHAM  AL  35205

         YOUR ATTORNEY CODE IS HOO024

     THE SUMMONS AND COMPLAINT           WAS SERVED ON COUNTRYWIDE HOME LOANS
     ON 08/17/2010 BY: CERTIFIED MAIL.





                    DATE:09/01/2010  CLERK:TED HOOKS
                                     300 CALHOUN CO COURTHOUSE
                                     ANNISTON  AL  36201
                                     (256)231-1750
     ---------------------------------------------------------------
     OPERATOR: KRD
     PREPARED: 09/01/2010
```

AVSO702

ALABAMA JUDICIAL DATA CENTER
CALHOUN      COUNTY
SERVICE NOTICE
CV 2010 900364.00
R. JOEL LAIRD

IN THE CIRCUIT  COURT OF  CALHOUN      COUNTY

MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL     D001

STIRLING JAMES LARRY JR          CASE NUMBER: CV 2010 900364 00
1117 22ND ST S STE 101           PARTY NUMBER: C001
BIRMINGHAM AL  35205

YOUR ATTORNEY CODE IS STI011

THE SUMMONS AND COMPLAINT         WAS SERVED ON BANK OF NEW YORK AS TR
ON 08/17/2010 BY: CERTIFIED MAIL.

DATE:09/01/2010  CLERK:TED HOOKS
                 300 CALHOUN CO COURTHOUSE
                 ANNISTON  AL  36201
                 (256)231-1750

OPERATOR: KRD
PREPARED: 09/01/2010

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Bank of New York
c/o CT Corporation System
Suite 605
2 N. Jackson St.
Montgomery, AL 36104

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Laura Parr_   ☐ Agent
                 ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                8/17/10

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☑ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*     7009 0960 0001 0834 9424

PS Form 3811, February 2004      Domestic Return Receipt  CV 2010-900364   102595-02-M-1540

AVSO702                    ALABAMA JUDICIAL DATA CENTER
                               CALHOUN      COUNTY
                               SERVICE NOTICE
                                                      CV 2010 900364.00
                                           R. JOEL LAIRD
-----------------------------------------------------------------------

              IN THE CIRCUIT  COURT OF  CALHOUN      COUNTY

MICHAEL V STEPHENSON ET AL V. THE BANK OF NEW YORK AS TRUSTEE ET AL     D001


     HOOD RHONDA STEADMAN              CASE NUMBER: CV 2010 900364 00
     1117 22ND ST S STE 101           PARTY NUMBER:C001
     BIRMINGHAM  AL  35205

     YOUR ATTORNEY CODE IS HOO024

THE SUMMONS AND COMPLAINT            WAS SERVED ON BANK OF NEW YORK AS TR
ON 08/17/2010 BY: CERTIFIED MAIL.






                    DATE:09/01/2010   CLERK:TED HOOKS
                                      300 CALHOUN CO COURTHOUSE
                                      ANNISTON  AL  36201
                                      (256)231-1750
-----------------------------------------------------------------------
OPERATOR: KRD
PREPARED: 09/01/2010

## Case Action Summary - 11CV201090036400

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 08/07/2010 | 8:10:17 | EFILE | COMPLAINT E-FILED. | STI011 |
| 08/07/2010 | 8:11:05 | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 08/07/2010 | 8:11:06 | FILE | FILED THIS DATE: 08/07/2010          (AV01) | AJA |
| 08/07/2010 | 8:11:07 | ASSJ | ASSIGNED TO JUDGE: R. JOEL LAIRD          (AV01) | AJA |
| 08/07/2010 | 8:11:08 | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 08/07/2010 | 8:11:09 | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 08/07/2010 | 8:11:10 | EORD | E-ORDER FLAG SET TO "N"          (AV01) | AJA |
| 08/07/2010 | 8:11:11 | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 08/07/2010 | 8:11:12 | C001 | C001 PARTY ADDED: STEPHENSON MICHAEL V     (AV02) | AJA |
| 08/07/2010 | 8:11:13 | ATTY | LISTED AS ATTORNEY FOR C001: STIRLING JAMES LARRY | AJA |
| 08/07/2010 | 8:11:14 | ATTY | LISTED AS ATTORNEY FOR C001: HOOD RHONDA STEADMAN | AJA |
| 08/07/2010 | 8:11:15 | EORD | C001 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 08/07/2010 | 8:11:17 | C002 | C002 PARTY ADDED: STEPHENSON JAN          (AV02) | AJA |
| 08/07/2010 | 8:11:18 | ATTY | LISTED AS ATTORNEY FOR C002: STIRLING JAMES LARRY | AJA |
| 08/07/2010 | 8:11:19 | ATTY | LISTED AS ATTORNEY FOR C002: HOOD RHONDA STEADMAN | AJA |
| 08/07/2010 | 8:11:20 | EORD | C002 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 08/07/2010 | 8:11:23 | D001 | D001 PARTY ADDED: THE BANK OF NEW YORK AS TRUSTEE | AJA |
| 08/07/2010 | 8:11:24 | ATTY | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 08/07/2010 | 8:11:25 | SUMM | CERTIFIED MAI ISSUED: 08/07/2010 TO D001     (AV02) | AJA |
| 08/07/2010 | 8:11:26 | EORD | D001 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 08/07/2010 | 8:11:29 | D002 | D002 PARTY ADDED: MORTGAGE ELECTRONIC REGISTRATION | AJA |
| 08/07/2010 | 8:11:30 | ATTY | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 08/07/2010 | 8:11:31 | SUMM | CERTIFIED MAI ISSUED: 08/07/2010 TO D002     (AV02) | AJA |
| 08/07/2010 | 8:11:32 | EORD | D002 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 08/07/2010 | 8:11:35 | D003 | D003 PARTY ADDED: COUNTRYWIDE HOME LOANS, INC. | AJA |
| 08/07/2010 | 8:11:36 | ATTY | LISTED AS ATTORNEY FOR D003: PRO SE          (AV02) | AJA |
| 08/07/2010 | 8:11:37 | SUMM | CERTIFIED MAI ISSUED: 08/07/2010 TO D003     (AV02) | AJA |
| 08/07/2010 | 8:11:38 | EORD | D003 E-ORDER FLAG SET TO "N"          (AV02) | AJA |
| 08/07/2010 | 8:11:54 | EFILE | COMPLAINT - SUMMONS | |
| 08/09/2010 | 11:44:59 | SCAN | CASE SCANNED STATUS SET TO: Y          (AV01) | VIR |
| 08/09/2010 | 11:45:26 | C001 | C001 NAME CHANGED FROM: STEPHENSON MICHAEL V(AV02) | VIR |
| 08/09/2010 | 11:46:09 | D001 | D001 NAME CHANGED FROM: THE BANK OF NEW YORK AS TR | VIR |
| 08/16/2010 | 2:57:53 | SUMM | CERTIFIED MAI ISSUED: 08/16/2010 TO D001     (AV02) | VIR |
| 08/16/2010 | 2:58:03 | SUMM | CERTIFIED MAI ISSUED: 08/16/2010 TO D002     (AV02) | VIR |
| 08/16/2010 | 2:58:09 | SUMM | CERTIFIED MAI ISSUED: 08/16/2010 TO D003     (AV02) | VIR |
| 08/17/2010 | 12:00:00 | ---- | SCANNED - RETURN OF SERVICE - ON THE BANK OF NEW YORK, MORTGAGE ELECTROIC REGISTRATION, AND COUNTRYWIDE HOME LOANS, INC. | |
| 09/01/2010 | 12:32:55 | SERC | D001 SERVED CERTIFIED MAIL ON 08/17/2010 | KRD |
| 09/01/2010 | 12:32:58 | SERC | D002 SERVED CERTIFIED MAIL ON 08/17/2010 | KRD |
| 09/01/2010 | 12:33:00 | SERC | D003 SERVED CERTIFIED MAIL ON 08/17/2010 | KRD |

**EXHIBIT 2**

MORT    4423    262
Recorded In Above Book and Page
03/19/2007 12:31:11 PM
Alice K. Martin
Judge of Probate
Calhoun County, Alabama

Record & Return to:
Meridian Title Services, Inc.
7652 Ashley Park Court, #306
Orlando, FL. 32835

PREPARED BY: LISA RAUSCH

FOUNDATION FINANCIAL GROUP
100 GALLERIA PKWY SUITE 1400
ATLANTA, GEORGIA 30339
Loan Number: 1012544053

159403746

610   159403746   D2   001   001

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 1005234-0070302001-4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   MARCH 10, 2007                , together with all Riders to this document.
**(B)** "**Borrower**" is MICHAEL V. STEPHENSON AND JAN STEPHENSON, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
**(C)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** "**Lender**" is   FOUNDATION FINANCIAL GROUP

Lender is a   LLC                                                                                organized and existing under the laws of   GEORGIA
Lender's address is   100 GALLERIA PKWY SUITE 1400, ATLANTA, GEORGIA 30339

**(E)** "**Note**" means the promissory note signed by Borrower and dated   MARCH 10, 2007
The Note states that Borrower owes Lender   EIGHTY-SEVEN THOUSAND SIX HUNDRED AND 00/100                                                Dollars (U.S. $ 87,600.00           ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2037
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3001 01/01 (02/01/07)                    Page 1 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

7-483

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |

ADDENDUM  TO  ADJUSTABLE  RIDER

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY              of   .            CALHOUN              :
[Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

DocMagic *eForms* 800-649-1362
www.docmagic.com

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES
A.P.N.: 21 06 23 0 001 033.000

which currently has the address of  3924 CLOVERDALE ROAD
                                                          [Street]

ANNISTON                              , Alabama  36207    ("Property Address"):
[City]                                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree

in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3001 01/01 (02/01/07)                          Page 5 of 14                          DocMagic *eForms* 800-649-1362
www.docmagic.com

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

---

DocMagic *eForms* 800-649-1362
www.docmagic.com

   9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

   Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

   Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

   Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3001 01/01 (02/01/07)                                    Page 8 of 14                             DocMagic *eFerms* 800-649-1362
                                                                                                       www.docmagic.com

MORT   4423   270

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

DocMagic *EForms* 800-649-1362
www.docmagic.com

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

MORT   4423   272

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate

DocMagic *eFormss* 800-649-1362
www.docmagic.com

payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in   CALHOUN                 County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.



ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3001 01/01 (02/01/07)                Page 12 of 14                DocMagic eForms 800-649-1362
www.docmagic.com

MORT    4423    274

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. (ALA CODE 5-19-6)**

_____ (Seal)
MICHAEL V. STEPHENSON            -Borrower
3924 CLOVERDALE RD,
ANNISTON, AL. 36207

_____ (Seal)
JAN STEPHENSON                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAID IN FULL

Witness:                         Witness:

_____  _____

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3001 01/01 (02/01/07)                Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

MORT    4423    275

—————————— [Space Below This Line For Acknowledgment] ——————————

State of Alabama                                    )

County of ___CALHOUN_____ )

   I, _____*Vicki Kilgore*_____ (name of officer),
a Notary Public in and for said County in said State (or for said State at Large), hereby certify that
MICHAEL V. STEPHENSON AND JAN STEPHENSON _____

_____

_____ ,
whose name(s) is/are signed to the foregoing Security Instrument, and who is/are known to me, acknowledged before
me on this day that, being informed of the contents of the above and foregoing Security Instrument, he/she/they
executed the same voluntarily on the day the same bears date.

   Given under my hand and official seal of office this ___10th___ day of __*March*__, __2007__ .

(Seal)

                                      *Vicki Kilgore*
                                          Notary Public

My commission expires: ___2-28-2010___

This Instrument was prepared by:

DocMagic *eForms* 800-649-1362
www.docmagic.com

# EXHIBIT "A"
## LEGAL DESCRIPTION

MORT     4423     276

THAT PART OF LOTS 2 AND 3, BLOCK F, AS SHOWN ON PLAT OF SECOND ADDITION TO GREENBRIER SUBDIVISION AS RECORDED IN PLAT BOOK N, PAGE 45, IN PROBATE OFFICE OF CALHOUN COUNTY, ALABAMA; FURTHER DESCRIBED AS FOLLOWS:

BEGIN AT POINT ON SOUTH LINE OF CLOVERDALE ROAD 28.0 FEET WEST OF THE NORTHWEST CORNER OF LOT 4, BLOCK F, THENCE SOUTH 3° 15' EAST, 162.26 FEET, THENCE SOUTH 86° – 08' WEST 99.89 FEET, THENCE N 10° – 07' WEST 160.90 FEET TO THE SOUTHLINE OF CLOVERDALE ROAD, THENCE EASTERLY ALONG SOUTH LINE OF CLOVERDALE ROAD 119.06 FEET TO THE POINT OF BEGINNING, BEING PART OF LOTS 2 AND 3, SAID BLOCK F, SITUATED, LYING AND BEING IN CALHOUN COUNTY, ALABAMA.

SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENT, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.

A/K/A:  3924 Cloverdale Rd, Anniston, AL  36207
Date Acquired:  3/27/2006



PAID IN FULL

9

MORT   4423   277

Loan Number: 1012544053

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal* - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 10th day of MARCH, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FOUNDATION FINANCIAL GROUP, LLC ("Lender") of the same date and covering the property described in the Security Instrument and located at:

3924 CLOVERDALE ROAD, ANNISTON, ALABAMA 36207

(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 10.075 %. The unpaid principal of the Note is being amortized over an assumed 40 -year period (the "Amortization Period"). The unpaid principal of the Note is fully due and payable on the maturity date of the Note. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the 1st day of APRIL, 2010 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

---

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000                                        percentage points (        6.750 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point  (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.  Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D)  Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.575  % or less than       10.075 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    ONE AND 500/1000
                                        percentage points (        1.500 %) from the rate of interest I have been paying for the preceding            6          months.  My interest rate will never be greater than 17.075  %. My interest rate will never be less than       10.075 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)

NCMC - SIX MONTH LIBOR MULTISTATE BALLOON ADJUSTABLE RATE RIDER
RE-560 19/19/06                                        Page 2 of 3          *DocMagic* *eFarms* 800-649-1362
                                                                                                www.docmagic.com

MORT    4423    279

without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
MICHAEL V. STEPHENSON -Borrower

_____ (Seal)
JAN STEPHENSON -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MORT   4423   280

Loan Number: 1012544053

# ADJUSTABLE RATE RIDER ADDENDUM
## (LIBOR INDEX - RATE CAPS)

This Adjustable Rate Rider Addendum is made this 10th  day of MARCH,  2007
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note
to FOUNDATION FINANCIAL GROUP, LLC
(the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

3924 CLOVERDALE ROAD, ANNISTON, ALABAMA 36207
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions
of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and
supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

4.   (D) LIMITS ON INTEREST RATE CHANGES
    The interest rate I am required to pay at the first Change Date will not be greater than
    11.575 % or less than        10.075   %.  Thereafter, my interest rate will never be
increased or decreased on any single Change Date by more than ONE AND 500/1000
                                  percentage point(s) (      1.500   %) from the rate of interest
I have been paying for the preceding  6      months.  My interest rate will never be greater than
    17.075 % or less than    10.075  %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable
Rate Rider Addendum.

_____ (Seal)          _____ (Seal)
MICHAEL V.              -Borrower          JAN STEPHENSON         -Borrower
STEPHENSON

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

Mortgage Tax        131.40
Recording Fee        63.00
TOTAL              194.40

NCMC ADJUSTABLE RATE RIDER ADDENDUM
RE-102  08/22/96

DocMagic eFPorms  800-649-1362
www.docmagic.com

# EXHIBIT 3

1594037 46
1549

MIN: 1005234-0070302001-4                    Loan Number: ~~1012544053~~

# ADJUSTABLE RATE BALLOON NOTE

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  LENDER IS UNDER NO OBLIGATION
TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE
PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU
THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR
ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN
REFINANCING FROM THE SAME LENDER.

MARCH 10, 2007                    ATLANTA                    GEORGIA
[Date]                              [City]                      [State]

3924 CLOVERDALE ROAD, ANNISTON, ALABAMA 36207
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 87,600.00          (this amount is
called "Principal"), plus interest, to the order of Lender.  Lender is FOUNDATION FINANCIAL
GROUP, LLC (CFL # 19101)
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest
at a yearly rate of     10.075   %.  The interest rate I will pay may change in accordance with Section 4 of this
Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

## 3.    PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on MAY 1
2007     .  My monthly payments will be based on an assumed 40     -year amortization period (the
"Amortization Period").  I will make these payments every month until I have paid all of the principal and interest
and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of
its scheduled due date and will be applied to interest before Principal.  If, on APRIL 1, 2037
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

NCMC - ADJUSTABLE RATE BALLOON NOTE (MULTISTATE)
RE-527  01/18/06                              Page 1 of 5                    DocMagic *eForms* 800-649-1362
www.docmagic.com

I will make my monthly payments at 100 GALLERIA PKWY SUITE 1400, ATLANTA, GEORGIA 30339
                                                 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 749.01                . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the 1st    day of APRIL, 2010                , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000                     percentage point(s) (      6.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       11.575 % or less than     10.075 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000                     percentage point(s) (    1.500 %) from the rate of interest I have been paying for the preceding 6    months. My interest rate will never be greater than       17.075 %. My interest rate will never be less than 10.075 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

---

NCMC - ADJUSTABLE RATE BALLOON NOTE (MULTISTATE)
RE-527  01/18/06                                    Page 2 of 5

DocMagic *eFortss* 800-649-1362
www.docmagic.com

**5.     BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.     LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.     BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15      calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

NCMC - ADJUSTABLE RATE BALLOON NOTE (MULTISTATE)
RE-527  01/18/06                                              Page 3 of 5                          DocMagic *eFormse*  800-649-1362
www.docmagic.com

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. (ALA CODE 5-19-6)**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)
MICHAEL V. STEPHENSON            -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

NCMC - ADJUSTABLE RATE BALLOON NOTE (MULTISTATE)
RE-527  01/18/06                    Page 5 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan Number: ~~1012544053~~  1594037446

# ASSIGNMENT OF NOTE
# WITHOUT RECOURSE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned hereby sells, transfers, endorses, assigns and delivers to:

**Countrywide Home Loans**

All of his rights, title, and interest in and to the attached promissory note dated: MARCH 10, 2007 in the face amount of   $ 87,600.00          The borrowers in said promissory note are: MICHAEL V. STEPHENSON

Said promissory note is secured by a security instrument of the same date on real property located at: 3924 CLOVERDALE ROAD, ANNISTON, ALABAMA 36207

FOUNDATION FINANCIAL GROUP, LLC

(Beneficiary)
transfers all rights accrued or to accrue under said note and securing security instrument in which the undersigned is the Beneficiary and borrowers are trustors.

Dated: 3-10-07

BENEFICIARY:
FOUNDATION FINANCIAL GROUP, LLC

By: _____
Name and Title

Paul Scott, Managing Partner

_PAID IN FULL_

ASSIGNMENT OF NOTE WITHOUT RECOURSE

DocMagic *eRxxxxx* 800-649-1362
www.docmagic.com

000159403746MN3

MORT    4508    743
Recorded In Above Book and Page
07/14/2008 12:37:18 PM
Alice K. Martin
Judge of Probate
Calhoun County, Alabama

STATE OF ALABAMA                    )

COUNTY OF CALHOUN                   )

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (the "Assignor"), does hereby transfer, assign, set over and convey unto THE BANK OF NEW YORK, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2007-5ES, SERIES 2007-5 (the "Assignee"), its successors, transferees, and assigns forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by MICHAEL V. STEPHENSON AND JAN STEPHENSON, HUSBAND AND WIFE, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR FOUNDATION FINANCIAL GROUP dated the 10th day of March, 2007, and filed for record in Book 4423, Page 262, in the Probate Office of Calhoun County, Alabama, covering property described in said Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned in and to the property described in said Mortgage.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. has caused this instrument to be executed by Stephen G. Collins, as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., pursuant to that certain Agreement for signing  attached hereto as Exhibit A and fully incorporated herein.  This Assignment is executed on this the _50_ day of _June_____, 2008.

MORTGAGE     ELECTRONIC     REGISTRATION
SYSTEMS, INC.

By: _____
    Stephen G. Collins
    Assistant Secretary and Vice President of
    Mortgage Electronic Registration Systems, Inc.

STATE OF _Alabama_____           )

COUNTY OF _Jefferson___          )

I, _____, a Notary Public in and for the said County and State, do hereby certify that Stephen G. Collins, whose name as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., a corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of this Assignment, he, and with full authority, executed the same voluntarily for and as the act of said corporation, and acting in its capacity as Assistant Secretary and Vice President as aforesaid.

*Assignee's*
MORTGAGEE'S MAILING ADDRESS:
The Bank of New York
c/o Countrywide Home Loans
(see right)

Given under my hand and official seal this _30__ day of _June_____ 2008.

_____
Notary Public

My Commission Expires: MY COMMISSION EXPIRES OCTOBER 17, 2011

This instrument prepared by:
Ginny Rutledge
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255

*Countrywide Home Loans, Inc*
*7105 Corporate Drive*
*Mail Stop PTX-C-35*
*Plano, TX 75024*

# EXHIBIT 4

DEED   3108   498
Recorded In Above Book and Page
08/21/2008 02:39:36 PM
Alice K. Martin
Judge of Probate
Calhoun County, Alabama

SEND TAX NOTICE TO:
Countrywide Home Loans, Inc.
7105 Corporate Drive, Mail Stop PTX-C-35
Plano, TX 75024
(#159403746)

STATE OF ALABAMA        )

COUNTY OF CALHOUN        )



610   159403746   DMS 001   001

**FORECLOSURE DEED**

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 10th day of March, 2007, Michael V. Stephenson and Jan Stephenson, husband and wife, executed that certain mortgage on real property hereinafter described to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Foundation Financial Group, which said mortgage was recorded in the Office of the Judge of Probate of Calhoun County, Alabama, in Mortgage Book 4423, Page 262, said mortgage having subsequently been transferred and assigned to The Bank of New York, as Trustee for the Benefit of the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, by instrument recorded in Mortgage Book 4508 Page 743, in the aforesaid Probate Office ("Transferee"); and

WHEREAS, in and by said mortgage, the Transferee was authorized and empowered in case of default in the payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse door in the City of Anniston, Calhoun County, Alabama, after giving notice of the time, place, and terms of said sale in some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the Transferee or any person conducting said sale for the Transferee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the Transferee may bid at the sale and purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5 did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the Anniston Star, a newspaper of general circulation published in Calhoun County, Alabama, in its issues of July 5, 2008, July 12, 2008, and July 19, 2008; and

WHEREAS, on August 11, 2008, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5 did offer for sale and sell at public outcry in front of the Courthouse door in Anniston, Calhoun County, Alabama, the property hereinafter described; and

WHEREAS, Michael Corvin as member of Corvin Auctioneering, LLC was the auctioneer who conducted said foreclosure sale and was the person conducting the sale for the said The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5; and

WHEREAS, The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, was the highest bidder and best bidder in the amount of Eighty-Nine Thousand Two Hundred Fifty And 00/100 Dollars ($89,250.00) on the indebtedness secured by said mortgage, the said The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, by and through Michael Corvin as member of Corvin Auctioneering, LLC as auctioneer conducting said sale and as attorney-in-fact for said Transferee, does hereby grant, bargain, sell and convey unto The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, all of its right, title, and interest in and to the following described property situated in Calhoun County, Alabama, to-wit:

> That part of Lots 2 and 3, Block F, as shown on Plat of Second Addition to Greenbrier Subdivision as recorded in Plat Book 14, Page 45, in Probate Office of Calhoun County, Alabama; further described as follows:
>
> Begin at Point on South line of Cloverdale Road 20.0 feet West of the Northwest corner of Lot 4, Block F, thence South 3 degrees 15 minutes East, 162.26 feet, thence South 86 degrees 00 minutes West 99.89 feet, thence North 10 degrees 07 minutes West 160.90 feet to the South line of Cloverdale Road, thence Easterly along South line of Cloverdale Road 119.06 feet to the Point of Beginning, being part of Lots 2 and 3, said Block F, situated, lying and being in Calhoun County, Alabama.

TO HAVE AND TO HOLD the above described property unto The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5 its successors/heirs and assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of Alabama; and also subject to all


DEED    3108    500

recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

     IN WITNESS WHEREOF, The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, has caused this instrument to be executed by and through Michael Corvin as member of Corvin Auctioneering, LLC, as auctioneer conducting said sale and as attorney-in-fact for said Transferee, and said Michael Corvin as member of Corvin Auctioneering, LLC, as auctioneer and attorney-in-fact for said Transferee, has hereto set his/her hand and seal on this August 11, 2008.

The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5

By: Corvin Auctioneering, LLC
Its: Auctioneer and Attorney-In-Fact

By: _____
    Michael Corvin, Member

| STATE OF ALABAMA | ) | Mental Health Fee | 4.00 |
| | | Recording Fee | 15.00 |
| COUNTY OF JEFFERSON | ) | TOTAL | 19.00 |

    I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Michael Corvin, whose name as member of Corvin Auctioneering, LLC acting in its capacity as auctioneer and attorney-in-fact for The Bank of New York, as Trustee for the Benefit of the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2007-5ES, Series 2007-5, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such member and with full authority, executed the same voluntarily for and as the act of said limited liability company acting in its capacity as auctioneer and Attorney-in-fact for said Transferee.

    Given under my hand and official seal on this August 11, 2008.

_____
Notary Public
My Commission Expires: MY COMMISSION EXPIRES FEBRUARY 11, 2012

This instrument prepared by:
Ginny Rutledge
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama 35255-5727

STATE OF ALABAMA, CALHOUN COUNTY
I hereby certify that no Deed Tax has been
collected on this instrument.

_____
Judge of Probate

"TAX EXEMPT"

# EXHIBIT 5

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

MICHAEL V. STEPHENSON AND )
JAN STEPHENSON, )
)
     PLAINTIFFS, )
)
vs )    CIVIL ACTION NO.: CV 2010-900364
)
THE BANK OF NEW YORK AS )
TRUSTEE for Certificate Holders )
CWABS, INC. Asset-Backed Certificates )
Series 2007-5ES, Series 2007-5; )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC. )
AS NOMINEE FOR FOUNDATION )
FINANCIAL GROUP; COUNTRYWIDE )
HOME LOANS, INC., )
)
     DEFENDANTS. )

## NOTICE OF FILING NOTICE OF REMOVAL

TO:    James L. Stirling, Jr., Esq.        Nick Wooten, Esq.
         Rhonda Steadman Hood, Esq.    Wooten Law Firm, PC
         Stirling & Hood, LLC            PO Box 3389
         1117 22nd Street South, Suite 101   Auburn, AL 36862
         Birmingham, AL 35205

Please note that the Defendants Countrywide Home Loans, Inc., The Bank of New York

as Trustee for Certificate Holders CWAB, Inc. Asset-Backed Certificates Series 2007-5ES,

Series 2007-5 and  Mortgage Electronic Registration Systems, Inc. have on September 16, 2010,

filed a Notice of Removal, a true and correct copy of which is attached hereto, in the office of the

Clerk of the United States District Court for Northern District of Alabama, Eastern Division.

                                       Barry A. Brock

{BH042309.1}

An Attorney for Defendants  Countrywide
Home Loans, Inc., The Bank of New York
and Mortgage Electronic Registration
Systems, Inc.

OF COUNSEL:
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP
1819 5th Avenue North
P. O. Box 830642
Birmingham, Alabama 35203/35283-0642
Telephone:  (205) 244-5281
Facsimile:  (205) 244-5481
bbrock@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Removal has been
served upon counsel of record on this 16th day of September, 2010, by placing in the United
States mail, properly addressed and postage prepaid, as follows:

James L. Stirling, Jr., Esq.                  Nick Wooten, Esq.
Rhonda Steadman Hood, Esq.                    Wooten Law Firm, PC
Stirling & Hood, LLC                          PO Box 3389
1117 22nd Street South, Suite 101             Auburn, AL 36862
Birmingham, AL 35205

_____
OF COUNSEL

{BH042309.1}